THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HARRY
SIMMONS, Defendant.

County Court, Kings County, January 11, 1927.

Crimes — fourth offender sentence — defendant was indicted for " grand
larceny in the second degree, as a second offense "— court, on recom-
mendation of district attorney, subsequently accepted plea of guilty
of " grand larceny in the second degree, as a first offense "— there-
after, while defendant was serving three-year sentence in prison,
district attorney filed supplemental information, under Penal Law,
§ 1943, charging defendant with three alleged prior felony convictions
and requested defendant be recalled for resentence to life term in
accordance with Penal Law, § 1942 — court, under former jeopardy
provision of Constitution (Art. 1, § 6), was without power to resentence
defendant — compromise of prior offender plea was final — fact that
defendant pleaded guilty to indictment " as a first offense " bars
resentence as second offender on basis of alleged third felony conviction
not pleaded in indictment — district attorney, having elected to proceed
by prior offender indictment, cannot now avail himself of special prior
offender procedure provided for in Penal Law, § 1943 — life term for
fourth offenders is discretionary, not mandatory, and court properly
refused to impose life sentence — State may not be heard to repudiate
arrangement between district attorney and defendant for first offender
conviction — arrangement constituted valid pact binding upon State
as well as upon defendant — State estopped from invoking prior offender
procedure upon basis of estoppel in pais.

The defendant was indicted for " grand larceny in the second degree, as a second
offense," and upon being brought to trial changed his plea of not guilty to a
plea of guilty of " grand larceny in the second degree, as a first offense." The
plea, upon the recommendation of the district attorney, was accepted by the
court and the defendant was thereafter sentenced to Sing Sing for three years
upon a commitment which recited that he was convicted as a first offender.
While the defendant was serving his sentence, the district attorney, under section
1943 of the Penal Law, filed a supplemental information charging the defendant
with three alleged prior felony convictions and requested that he be recalled
for resentence to a life term in accordance with section 1942 of the Penal Law.

This court is without power to resentence defendant by reason of the former
jeopardy provision of the State Constitution (Art. 1, § 6), and although section
1942 of the Penal Law (as amd. by Laws of 1926, chap. 457) purports to
render it unnecessary to allege prior convictions in an indictment, that statute
does not deprive the grand jury of its power to so allege, if it sees fit, and,
therefore, the compromise of the prior offender plea was final as to all matters
charged in the indictment to which defendant pleaded guilty. Nor may
defendant be resentenced as a second offender on the basis of the alleged third
felony conviction, which was not pleaded in the indictment, since the terms
of the judgment, " guilty as a first offense," are sufficiently broad to protect
the defendant's constitutional rights against being placed in second jeopardy.

The district attorney, having elected to proceed by the prior offender indictment,
cannot now be heard to avail himself of the special prior offender procedure
set forth in section 1943 of the Penal Law.

A sentence to a term for life for fourth offenders is discretionary and not mandatory within the meaning of section 1942 of the Penal Law.

Nor may the State repudiate the arrangement between the district attorney and the defendant for a first offender conviction, since the offer of a compromise plea, upon acceptance, constitutes a valid compact binding upon the State as well as upon the defendant.

Moreover, the State is estopped from invoking the prior offender procedure provided for by section 1943 of the Penal Law, on the basis of an estoppel *in pais;* the basis of an estoppel *in pais* is that the party against whom the estoppel is urged has by his own act or omission caused another to put himself in a position from which he cannot retreat without loss, and such is the case where the defendant is induced by the prosecuting officer to withdraw a plea of not guilty and put in a compromise plea.

FOURTH offender proceeding under section 1943 of the Penal Law.

*Charles J. Dodd, District Attorney,* for the People.

*Rufus L. Perry,* for the defendant.

TAYLOR, J.   This opinion is rendered on objections raised by the defendant to fourth offender resentence proceedings under section 1943 of the Penal Law (as added by Laws of 1926, chap. 457).

As a foreword.   A previous opinion (not reported) and holding by this court in the same matter, although generally dealt with in a spirit of truth, was the subject of widespread distortion in certain publications.   The court, therefore, states at the outset that the questions here raised do not involve the recent statutory amendments increasing punishment for serious crimes; nor are the bulk of the amendments which are procedurally reformative in anywise affected.   This is not an " attack " on any law or group of laws. The questions to be decided center on the legal and constitutional rights of defendants who have been adjudged guilty under compromise of prior offender indictments; also on the correct interpretation of the fourth offender statute.   These questions will be decided according to law.   This word of caution is given for the reason that any exaggeration or distortion of the court's decision may be calculated to encourage perpetrators of crime, by giving them a false notion of security.   Such a situation is to be deplored and invites the heartiest co-operation to the end that accuracy of publication be adhered to.

The defendant was indicted for the crime of " grand larceny in the second degree, as a second offense," for having misappropriated $116.75 which he had in his possession as an employee of a coal and ice company.   The prior conviction charged in the indictment was as a second offender, so that the indictment in effect charged two prior felony convictions.   The defendant pleaded not guilty and was held for trial.   Upon being later brought to trial, the

district attorney moved that the court accept from the defendant a plea of guilty of " grand larceny in the second degree, as a first offense." Pursuant to a recent statute the court and the district attorney had before them, as a part of the records on the indictment, a certified police record of the defendant's prior conviction for two felonies, the same being the two prior felony convictions referred to in the indictment. The court granted the district attorney's motion, and the defendant, being then present and informed . thereof, agreed thereto and pleaded guilty " as a first offense." The conviction in this form was · duly indorsed on the indictment and became a part of the court records. Thereafter the court sentenced the defendant to three years in Sing Sing, which was strictly in accordance with the terms of the conviction. The commitment recited that the defendant was convicted as a first offender. In the meantime another alleged prior conviction had shown up and was before the court at the time of sentence.

Thereafter, and while defendant was serving his sentence, the district attorney filed a supplemental information under Penal Law, section 1943, in which he charged the defendant with his three alleged prior felony convictions and asked that the defendant 'be recalled for resentence to a life term in accordance with Penal Law, section 1942 (as amd. by Laws of 1926, chap. 457). The prior convictions charged were those heretofore referred to.

The court denied the application upon the ground that the defendant had been legally sentenced, and could not be legally resentenced.

In mandamus proceedings wherein this court sought to obtain an appellate court review of the resentence question, the technical point was raised that this court should not have refused to resentence without first going through the statutory ritual of bringing the defendant down from Sing Sing for arraignment. The Appellate Division accordingly declined to pass on the main question, and under its direction this court has caused the defendant to be brought down from Sing Sing for arraignment.  (See *Matter of Dodd v. Taylor*, 218 App. Div. 862.)

The defendant being arraigned under Penal Law, section 1943, remained mute as to the fourth offense charge, and through his counsel raised several objections involving his constitutional and statutory rights, and challenged the right of the court to impose resentence. A jury having been impanelled and sworn, the court recessed in order to rule on the defendant's motions and objections. These will now be taken up.

The first objection is based on the constitutional question of former jeopardy.  (State Const. art. 1, § 6.)  This objection appears to

be well founded. The court had the inherent power to accept the compromise plea of guilty as a first offender. That power has been exercised ever since the early days of common-law jurisprudence, and, where wisely controlled, is a valued adjunct to the administration of criminal law. It is an elementary principle of statutory construction that in the absence of any express statutory provision depriving the court of that inherent power, all statutes must be construed in the light of that power, and reconciled with the continued exercise thereof. (*McCluskey* v. *Cromwell,* 11 N. Y. 593, 601; *Burnside* v. *Whitney,* 21 id. 148; *Newell* v. *Wheeler,* 48 id. 486; *People ex rel. Hatzel* v. *Hall,* 80 id. 117; *Bertles* v. *Nunan,* 92 id. 152, 157; *President, etc., of Manhattan Company* v. *Laimbeer,* 108 id. 578; *People* v. *Palmer,* 109 id. 110; *Fitzgerald* v. *Quann,* Id. 441; *Dean* v. *Metropolitan El. R. Co.,* 119 id. 540, and many others.) Repeals by implication are not favored and will not be declared on the ground of inconsistency or repugnancy unless the same is plain and unavoidable. (*Grimmer* v. *Tenement House Dept.,* 204 N. Y. 370, 378.) It is elementary that a judgment on plea of guilty is as binding in all respects as a judgment of guilty on verdict of a jury (*People ex rel. Hubert* v. *Kaiser,* 150 App. Div. 541, 548; affd., 206 N. Y. 46) and likewise elementary that a conviction is a bar to further prosecution as to all facts charged in the indictment. (*People* v. *Dowling,* 84 N. Y. 478, 483, 484; *Shepherd* v. *People,* 25 id. 406, 419; *People ex rel. Evans* v. *McEwen,* 67 How. Pr. 105; *Kring* v. *Missouri,* 107 U. S. 221; 1 Bishop Crim. Law, § 676; 4 Black. Com. 336.) Although the amended statute purports to render it unnecessary to allege prior convictions in an indictment, the statute does not deprive the grand jury of its power to so allege, if it sees fit. (Penal Law, § 1942.) Therefore, the compromise of the prior offender plea placed a final and binding seal upon the case as to all matters charged in the indictment; and that seal may not be broken without violating the defendant's constitutional right against a second jeopardy. The further question remains, whether or not the defendant should be resentenced as a second offender on the basis of the alleged third felony conviction which was not pleaded in the indictment. If that be answered affirmatively the defendant must receive an additional two years. (Penal Law, §§ 1297, 1942.) This is a narrower question. In the absence of authority to the contrary the court is inclined to the view that the terms of the judgment, guilty " as a first offense," is sufficiently broad to protect the defendant's constitutional rights against any invasion whatever. A contrary holding would be capable of interpretation as a violation of the text of the judgment. This would tend in the eyes of those with whom the court has to deal to discredit the court's reputation

for squareness.   Inasmuch as the strength of the courts is largely derived from the confidence of the people in their fairness, anything that savors of judicial shrewdness, or otherwise tends to lessen the confidence of even the humblest, should be avoided.   That can be done only by giving the defendant the full benefit of the strict terms of the conviction, guilty " as a first offense."

The second objection is that the district attorney having elected to proceed by prior offender indictment cannot now be heard to avail of the special prior offender procedure set forth in Penal Law, section 1943.   Reference to the decisions on this point shows this objection to be well taken.   Section 1943 is new to this State, but it was taken from the statutes of Massachusetts and West Virginia. Referring to the constructional history of the Massachusetts statute, we find that this precise point was adjudicated in *Plumbly* v. *Commonwealth* (43 Mass. 413) and *Commonwealth* v. *Phillips* (28 id. 27).   In the former decision we find the following (pp. 415, 416): " But it is obvious, if the law merely provided that the additional punishment should be awarded on the conviction, that the convict would often escape, because the fact of· such former conviction was not known to the prosecuting officer.   It will often occur that such fact will not be known to any one competent to bring it to the notice of a court, until the prisoner is actually recommitted to the State prison, and there recognized by its officers. In order to adapt the law to these two cases, the statute provides an *alternative* mode of proceeding; *either* to insert an averment of the former conviction or convictions in the indictment, and prove the averment as part of the indictment, in which case the whole punishment will be awarded by the court before whom the conviction is had; *or* by an information in legal form, filed by the law officer of the Commonwealth, on notice given him by the warden of the State prison, or otherwise.   Both cannot be pursued, to obtain one and the same object; and as the conviction must of necessity be first in time, if the former convictions are then proceeded upon, it necessarily supersedes the other.   Nothing remains for an information to reach."   A similar statute in West Virginia was construed on the same point by the court of last resort.   (*Graham* v. *West Virginia*, 224 U. S. 616.)   In the opinion we find (p. 626): " It is to prevent such a frustration of its policy [referring to unknown prior convictions], that provision is made for *alternative* methods; *either* by alleging the fact of prior conviction in the indictment and showing it upon the trial, *or* by a subsequent proceeding in which the identity of the prisoner may be ascertained and he may be sentenced to the full punishment fixed by law."   In that case the procedure was by information subsequent to conviction.   The

court held that this procedure was authorized, the reason for so holding being that the indictment was silent as to prior offenses (see p. 629, as follows): " The indictment did not allege the prior convictions; the issue was not involved in the trial of the indictment and the court could not have considered these convictions in imposing sentence." It is, therefore, clear that, in the case at bar, the district attorney having proceeded against Simmons in the first instance by prior offender indictment, he cannot now avail himself of the alternative remedy provided by section 1943. The two remedies being in the alternative, election to proceed by prior offender indictment is a bar under the cases cited, to the special statutory procedure following conviction. That the adoption of the latter procedure in this State was motivated by the same consideration that caused the enactment of the Massachusetts and West Virginia statutes is shown by the report of the Joint Legislative Committee on the co-ordination of civil and criminal practice acts (Baumes Committee Report [N. Y. Legis. Doc. 1926, vol. 17, No. 84], p. 22), as follows:

" *Resentencing of Second Offenders.* . There are times when a defendant is found guilty of the offense for which he has been tried without its being known by the prosecuting officers or the court that it is the second criminal offense of which he is guilty. Perhaps the facts were not known when the indictment was drawn. He receives a sentence based on the supposition that he is a first offender and is so entitled to the lessened penalty accorded by the statutes to such a one. After starting to serve this sentence, it is discovered that he is a second offender — a criminal of the worst character, may be deserving of much more severe punishment. Society should be protected and the criminal receive his just dues. We approve the suggestion that provides for the court sending for such a prisoner and resentencing him in accordance with his new found criminal history and recommend appropriate, carefully prepared legislation." Section 1943 was adopted pursuant to this recommendation.

The third objection is upon the ground that the life term for fourth offenders is discretionary, not mandatory, and that, therefore, the court was within its rights in refusing to impose a life sentence. The court takes to this view. The fourth offender statute (Penal Law, § 1942) was enacted in 1907. It is not a " Baumes " statute at all. For the last twenty years that statute has provided that upon a fourth felony conviction a defendant " shall " receive a life sentence. During all of that time no appellate court appears to have passed on whether or not that statute is mandatory. Certain minor or procedural amendments

by the " Baumes " statutes have no bearing on the question, one way or the other, nor has section 1943. We must, therefore, search for analogies and analyze other statutes and decisions for the purpose of ascertaining the precise meaning of the word " shall." It is not a question of what dictionaries say but of what the courts have held that makes the law. Let us first examine the second offender statute (Penal Law, § 1941). It says that a second offender " must " receive the maximum sentence accorded first offenders. That statute has been on the books for about 100 years, but it used to say " shall," the same as the present fourth offender statute. In 1881 it was amended by changing " shall " to " must." Why? Referring to the reviser's notes (Notes on R. S. 1830, p. 221) we find that the statute as it then existed was construed by the reviser as discretionary, " shall " being referred to as meaning " may." Let us go a step further. Why, when the fourth offender statute was enacted was it not similar in essential verbiage to the amended second offender statute? Why did it use " shall " instead of " must? " Was it not a recognition of an intended distinction between a mandatory second offender statute and a discretionary fourth offender statute? Was it not a sensible appreciation of the fact that the very severity of the life term was such as to warrant placing the discretion with the judges who, by their familiarity with the merits of each case, are in the best position to determine the punitive necessities? On this very point we find the following in the Baumes Committee Report (p. 26): " No one is more familiar with the whole situation surrounding the circumstances of the commission of the crime and the life and surroundings of the defendant than the judge before whom the trial is had and by whom the sentence is imposed. He, of all persons, is best able to see that the punishment fits the crime." Indeed there is not a word in the entire Baumes report indicating an intention to remove discretion from judges. Let us bear in mind, many felonies are comparatively trivial; some were not even crimes under the common law; some do not even involve moral turpitude. To illustrate: A boy who borrows his father's automobile without permission is guilty of a felony. The father, for not reporting his son to the police, is guilty of a felony as an accessory after the fact. Many other felonies are so trivial as to astound the lay mind. Many reputable citizens commit them without being conscious of the fact. Added to these reasons for wise judicial discretion, there are conceivably a host of mitigating circumstances which transform what at first blush appears to be criminality to mere social misfortune. A wise and conscientious judge of a criminal court may always be trusted to approximate the requirements of justice

according to his experience and conscience, and, where the facts warrant, to mete out life punishment to those who, because of habitual criminality, should be segregated for life as a public menace. Any fault with the life term statute has not lain at the door of the criminal judges, but is due to the former requirement that the life sentence could not be imposed without both indictment and conviction as a fourth offender. This procedural block was almost absolute. Seldom did a district attorney have the prior criminal record so as to include it in the indictment, and even when he did, seldom were juries found to give fourth offender convictions. This has been partly remedied by the recent amendments dispensing with the necessity for indictment. (Penal Law, § 1942.) By this new procedure the law has been equipped with teeth, and should be susceptible of intelligent enforcement. That even the last Legislature did not regard the fourth offender life term as other than discretionary is indicated by the adoption of section 1944 of the Penal Law (as added by Laws of 1926, chap. 705)* (a Baumes statute), providing that a fourth felony offender committing a felony while armed, is punishable by not less than twenty-five years nor more than life, in the discretion of the judge. If " shall " in section 1942 is mandatory, then section 1944 is contradicted and nullified. It is a simple rule of statutory construction that statutes shall have that construction, if possible, that enables them to be reconciled. (*Matter of Meyer*, 209 N. Y. 386, 389; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Purdy*, 167 App. Div. 637, 643; dissenting opinion adopted in 216 N. Y. 704.) The construction that an armed fourth offender may get only twenty-five years while an unarmed fourth offender must get life, would render the statute unconstitutional as failing to give the " equal protection of the laws " required by the Fourteenth Amendment. (*Hodgson* v. *Vermont*, 168 U. S. 262, 272, 273; *Matter of Converse*, 137 id. 624; *Connolly* v. *Union Sewer Pipe Company*, 184 id. 540, 558–561.) In the *Hodgson* case the opinion says: " We repeat, as so often has been said before, that the Fourteenth Amendment undoubtedly forbids any arbitrary deprivation of life, liberty or property, and in the administration of criminal justice requires that no different or higher punishment shall be imposed on one than is imposed on all for like offenses." Or let us take the construction placed by the Appellate Division on the word " shall " in section 535 of the Criminal Code, one of the recent Baumes amendments. That provision says that the court " shall " dismiss criminal appeals for failure to bring them on for argument within a specified time, unless the time be enlarged. A reading of this

* Since amd. by chapter 342 of the Laws of 1927.— [REP.

section indicates a fair construction that the enlargement of the time for argument shall be made before expiration of the statutory period.   Yet, as the court has been informed, the Appellate Division has exercised a wise discretion in deciding motions to dismiss upon the statutory ground, the word " shall " being quite clearly not intended to fetter the court's discretion.   As hereinbefore stated, the legal meaning of " shall " is not the lay meaning.   There are a host of cases on this point.   In *Munro* v. *State of New York* (223 N. Y. 208) the word was construed in relation to a statutory requirement concerning the Court of Claims.   The opinion, by CRANE, J., was unanimously concurred in.   Discussing this point he says (p. 214): " The words ' shall ' and ' must ' when found in a statute are not always imperative.   (*Matter of State of New York*, 207 N. Y. 582, 585.)   The instances are many in which courts have treated a mandatory word as merely permissive when necessary to sustain an act or accomplish the purpose which was clearly intended.   (*Matter of Rutledge*, 162 N. Y. 31; *Canal Commissioners* v. *Sanitary District of Chicago*, 184 Ill. 597; *State* v. *Strait*, 94 Minn. 384, 391.)   In *Anderson's Appeal* (215 Penn. St. 119) it was said: ' The word " shall " when used by the Legislature to a court is usually a grant of authority and means " may." ' ' As against the government, the word " shall," when used in statutes, is to be construed as " may," unless a contrary intention is manifest.' (*Railroad Co.* v. *Hecht*, 95 U. S. 168, 170.) "   The foregoing, let us bear in mind, is from the highest court in the State.   To same effect, see *Jenkins* v. *Putnam* (106 N. Y. 272); *Matter of Davies* (168 id. 89); *People* v. *Morse* (55 App. Div. 245).   The recent decision of the Appellate Division, First Department, in *People v. Gowasky* (219 App. Div. 19) is not authoritative on this point, for the reason that both of the defendants in that case had received life sentence.   That the General Sessions judge had power to do so was beyond question.   Whether the statute be mandatory or discretionary, the fact remains that the trial judge having the right to impose life sentence, the defendants could not obtain reversal on appeal.   The alleged mandatory feature of the statute was, therefore, not before the learned Appellate Division for adjudication.   Although the opinion purports to discuss the alleged mandatory point, it is mere obiter and appears to be rather an assumption that the statute is mandatory than a conclusion reasoned out by a process of legal deduction and with due reference to the authorities on the subject.

The fourth objection is that the State may not be heard to repudiate the arrangement between the district attorney and the defendant for a first offender conviction.   This point was passed

upon in *Camron* v. *State* (32 Tex. Crim. App. 180), the appellate court holding that an arrangement between the county attorney and a defendant in relation to an indictment constitutes a contract and must be enforced by the court on the defendant's motion, even to the extent, if such be the agreement, of dismissing the indictment. (See, also, *People* v. *Reilly;* 224 N. Y. 90, 95.) To hold otherwise would be to permit a district attorney to say in substance: " I caused the defendant to be indicted as a prior offender and then induced him to plead guilty as a first offender, knowing perfectly well that he understood he was to get first offender punishment. I shall now repudiate my end of the compact. The defendant shall learn that he has been tricked; that he will receive prior offender punishment." Obviously such a disposition would be shocking to believers in fair play, and by tending to undermine confidence in the courts would be against public policy. Is a compact less binding because made by a public official, or by a court? Are rules of simple honor applicable to private dealings only? Is there any doubt that the offer of a compromise plea, upon acceptance, constitutes a valid pact binding upon the people as well as upon the defendant? Is the law as to offer and acceptance applicable to private dealings only? Shall principles of ethics and square dealing be cast out from the cornerstone of our sacred judicial structure and deceit and chicanery be substituted in their stead? Supposing the defendant, instead of pleading guilty, had gone to trial, and although tried as a prior offender had been convicted by jury specifically as a first offender, can there be any doubt that, in such event, the verdict of the jury would be final and binding, and would limit the court to punishing the defendant as a first offender? That very situation not infrequently arises. Let us look at the case from another angle. Supposing a felony indictment is compromised by acceptance of a misdemeanor plea, notwithstanding that the defendant is in fact a fourth felony offender. In such case there is nothing in the new statute authorizing punishment as a prior offender. The new statute is limited to cases of conviction for new felonies, not misdemeanors. This misdemeanor plea would eliminate consideration of the past record. We, therefore, face this anomalous situation; If the punitive powers of the court are limited on acceptance of first offender felony pleas, the only recourse, in order to avoid unwarranted hardship in trivial repeater cases, will be to consider acceptance of misdemeanor pleas, which, in turn, will present the counter problem of inadequate punishment, and thereby militate against public policy. The court realizes, of course, that the district attorney in presenting his side of this point does so out of a sense

of official duty to test the law, and not because he is persuaded that the conduct of the courts may be other than upon a wise and honorable basis. The court is also satisfied that the district attorney acted in the public interest when he caused acceptance of the compromise plea.

The fifth objection is that the State is estopped from invoking the prior offender procedure provided by section 1943. The basis of estoppel *in pais* is that the party against whom the estoppel is urged has by his own act or omission caused another to put himself in a position from which he cannot retreat without loss. Such is the case where a defendant is induced by a prosecuting official to withdraw a plea of not guilty and put in a compromise plea. The elements of estoppel being present must be recognized and enforced.

The sixth objection is on the ground that under the State Constitution a conviction may not be had other than on indictment or presentment of a grand jury. (State Const. art. 1, § 6.) In its previous opinion herein this court cited a line of authorities tending to sustain the view that inasmuch as a prior offender crime is a different crime from a first offender crime, the precise element of prior offender should be alleged in the indictment. (*People* v. *Rosen,* 208 N. Y. 169; *People* v. *Sickles,* 156 id. 541; *Johnson* v. *People,* 55 id. 512; *Wood* v. *People,* 53 id. 511; *People* v. *Powers,* 6 id. 50; *People* v. *Allen,* 5 Den. 76; Bishop Crim. Pro. 505, 625, 633, 635, and note; 3 Greenl. Ev. 10. See, also, *People ex rel. Cosgriff* v. *Craig,* 195 N. Y. 190.) At that time, however, this court declined to pass on the point, and for the reason then stated will not do so now. A West Virginia statute similar to section 1943 of our Penal Law was passed on by the court of last resort, and was held to be constitutional. (*Graham* v. *West Virginia,* 224 U. S. 616.) The trouble with the *Graham* case is that, so far as appears from the report, the precise constitutional point raised by this objection was not passed upon. The case turned on a different constitutional point, to wit, due process of law under the Federal Constitution. The opinion explicitly states, thereby expressing a well-settled rule of Federal review: " The questions raised under the Constitution of the State are not open here." However, it may reasonably be doubted if any court short of the supreme tribunal of the State may be induced to distinguish the *Graham* case and rule affirmatively on the subject-matter of this objection.

Several further objections are raised, but in the absence of submission of authorities the court is not disposed to sustain them.

Having above indicated the manner in which the court will rule on the various points raised by the defendant, the court faces a procedural difficulty which must be met and overcome. The court

having heretofore endeavored to get the legal questions before the appellate courts for settlement without going through the avoidable procedural gestures provided by Penal Law, section 1943, finds itself overruled by the Appellate Division so far as arraignment is concerned. Should this court now sustain the defendant's objections without letting the triable issue go to the jury, the same thing may happen again. Formal rulings hereon will, therefore, be made upon return of a verdict of the jury, assuming the district attorney to be in a position to prove the alleged previous convictions. This will leave a clean cut issue of law for review by the appellate courts (if such be possible) uncomplicated by the presence of procedural technicalities.