## PEOPLE *v.* HARPER.

### DECISION OF THE COURT.

1. CRIMINAL LAW—NARCOTICS—UNLAWFUL SALE—UNLICENSED PERSON.

Conviction of defendant of selling narcotic drugs without a license, challenged on the ground of unreasonable statutory discrimination between licensed and unlicensed persons for illegal sale by providing different penalties for the two classes, is affirmed on the grounds that (1) there is no discrimination, different acts being punished, per DETHMERS, C. J. and BLACK and BRENNAN, JJ., and that (2) there is a reasonable classification, per KELLY and O'HARA, JJ.; T. M. KAVANAGH, SOURIS, and ADAMS, JJ., dissenting on ground that there is unreasonable classification of licensed and unlicensed persons (CLS 1961, § 335.152).

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 16–27, 40–48.
[2] 50 Am Jur, Statutes §§ 223, 224.
[3, 4] 33 Am Jur, Licenses §§ 1, 2, 7, 20.
[5] 25 Am Jur 2d, Drugs, Narcotics and Poisons § 22.
[6] 25 Am Jur 2d, Drugs, Narcotics and Poisons § 34.
[7] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 34, 40 *et seq.*
[8] 16 Am Jur 2d, Constitutional Law § 506 *et seq.*
[9] 16 Am Jur 2d, Constitutional Law §§ 305 *et seq.*, 506 *et seq.*
[10, 16] 16 Am Jur 2d, Constitutional Law § 506 *et seq.*
[11] 33 Am Jur, Licenses § 17.
[12] 50 Am Jur, Statutes § 217 *et seq.*
[13] 16 Am Jur 2d, Constitutional Law §§ 112, 225.
[14] 25 Am Jur 2d, Drugs, Narcotics and Poisons § 18 *et seq.*; 33 Am Jur, Licenses § 17.
[15] 16 Am Jur 2d, Constitutional Law §§ 305 *et seq.*, 506 *et seq.*; 25 Am Jur 2d, Drugs, Narcotics and Poisons § 18 *et seq.*; 33 Am Jur, Licenses § 17.
[17] 21 Am Jur 2d, Criminal Law § 525 *et seq.*; 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 44–48.

SEPARATE OPINION.

DETHMERS, C. J., and BLACK and BRENNAN, JJ.

2. STATUTES—CONSTRUCTION.

*Statutes should be so construed, if possible, as to uphold their constitutionality.*

3. LICENSES—ACTS PERMITTED.

*A license is a permission granted by proper authority to do an act which it is within the power of the licensing authority to permit.*

4. SAME—EVIDENCE.

*A license is not a piece of paper issued by the authority granting the license, although it may be evidenced by such a piece of paper.*

5. CRIMINAL LAW—NARCOTICS—SUPPRESSION ACT—EXEMPTIONS.

*The act for the suppression of illegal traffic in narcotic drugs exempts from its terms only those persons who are licensed to do what the act otherwise proscribes (CLS 1961, § 335.152).*

6. DRUGGISTS—HEROIN—SALE—LICENSE.

*No person can be licensed to sell heroin under Michigan law because Federal law absolutely prohibits the sale of heroin (18 USC § 1402, 21 USC § 173).*

7. CRIMINAL LAW—NARCOTIC DRUG—LICENSED PERSON—HEROIN—SALE.

*A person licensed to sell narcotic drugs under the uniform narcotic drug act may be prosecuted under an act for the suppression of the illegitimate traffic in narcotic drugs for a sale of heroin, because the exemption of licensed persons in the latter act extends only as far as the scope of the license, and no one can have a license to sell heroin (18 USC § 1402; 21 USC § 173; CL 1948, §§ 335.51–335.77, as amended; CLS 1961, § 335.152).*

8. CONSTITUTIONAL LAW—CRIMINAL LAW—CLASSIFICATION.

*Provision of different penalties in the uniform narcotic drug act and the act for the suppression of illegal traffic in narcotic drugs does not amount to a denial of the equal protection of the laws to one convicted of selling heroin because of the lesser penalty prescribed for one having a license to sell narcotic drugs under the uniform narcotic drug act, since the sale of heroin by any person, licensed or not, must be prosecuted under the act for the suppression of illegitimate traffic in narcotic drugs (18 USC § 1402; 21 USC § 173; CL 1948, §§ 335.51–335.77, as amended; CLS 1961, § 335.152).*

Separate Opinion.

Kelly and O'Hara, JJ.

9. Statutes—Police Power—Narcotics—Classification—Constitutional Law.

Statutes providing different penalties for violations of the narcotic laws by licensed dealers and by unlicensed individuals establish a classification which is proper as a reasonable exercise of the police power of the State and which is not repugnant to the equal protection clauses of the State and Federal Constitutions (US Const, Am 14; Mich Const 1963, art 1, § 2; CL 1948, § 335.51 et seq., as amended; CLS 1961, §§ 335.152, 335.153).

10. Constitutional Law—Equal Protection—Classification.

The equal protection of laws provision is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective (US Const, Am 14; Mich Const 1963, art 1, § 2).

11. Druggists—Licenses—Traffic in Narcotics.

The statute providing for the licensing of individuals to deal in narcotics is aimed primarily at safeguarding and regulating the legitimate trade of narcotics, whereas the statute directed toward suppression of the illegal traffic in narcotics by unlicensed persons is for an entirely different purpose (CL 1948, § 335.51 et seq., as amended; CLS 1961, §§ 335.152, 335.153).

12. Statutes—Construction—Courts.

The Court will not go out of its way to test the operation of a law under every conceivable set of circumstances, it being proper to determine such question only upon a specific case brought before it.

13. Constitutional Law—Abstractions.

Constitutional questions are not to be dealt with in the abstract.

Dissenting Opinion.

T. M. Kavanagh, Souris, and Adams, JJ.

14. Statutes—Classification—Narcotics.

Statutes providing penalties for possession and sale of narcotics by individual with a license and different penalties for similar acts by individual without a license result in a classification applicable to one convicted of possession and sale of heroin,

*despite Federal law necessitating surrender of all heroin to Federal authority (18 USCA § 1402; CLS 1961 §§ 335.70, 335-.152, 335.153).*

15. Same—Licenses—Narcotics—Police Power.

*Licensing of certain persons to handle narcotic drugs in a lawful and legal manner is provided by statute, and such regulation and classification is a proper exercise of police power regularly utilized for the protection of the public and does not license the commission of criminal acts (CL 1948, § 335.51 et seq., as amended).*

16. Constitutional Law — Equal Protection — Classification — Narcotics — Licenses — Possession — Sales.

*The equal protection clause in both Federal and State Constitutions is violated by classification in statutes providing penalties for possession and sale of narcotics by individual with a license and different penalties for similar acts by individual without a license, such classification having no reasonable or rational basis (US Const, Am 14; Mich Const 1963, art 1, § 2; PA 1937, No 343, § 2, as amended by PA 1952, No 132; PA 1952, No 266, § 2).*

17. Criminal Law—Sentence—Statutes—Presumptions.

*Conviction of and proper sentence for unlawful possession of narcotic drugs are not disturbed on appeal by defendant who was also convicted and illegally sentenced for unlawful sale of narcotics, where defendant is ordered discharged from latter sentence, notwithstanding statutory presumption that the offense of possession shall be deemed included within every offense under section relating to sales, there being no record showing that conviction of possession was based upon the statutory presumption (PA 1952, No 266, §§ 2, 3).*

Appeal from Court of Appeals, Division 2; J. H. Gillis, P. J., Quinn and T. G. Kavanagh, JJ., affirming Genesee, Parker (Donn D.), J. Submitted March 9, 1967. (Calendar No. 14, Docket No. 51,338.) Decided October 2, 1967.

1 Mich App 480, affirmed.

Johnny Harper was convicted for illegal possession of narcotics and for illegal sale of narcotics.

Affirmed in Court of Appeals. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Edward G. Henneke,* Assistant Prosecuting Attorney, for the people.

*John William Thomas,* for defendant.

BRENNAN, J. *(for affirmance).* The defendant was tried and convicted of selling narcotic drugs without a license. He was also convicted upon a second count of possession of narcotics without a license, contrary to the statute.[1] Defendant was sentenced to terms of 20 to 30 years and 8 to 10 years on these counts. Defendant challenges his conviction thereunder on the ground that the statutes under which he was convicted are unconstitutional in that they deny him equal protection of the laws. Defendant's claim is that if he were a physician, dentist, or pharmacist licensed to sell and dispense narcotics, he would have been charged under a different statute, conviction under which would have carried a maximum sentence of 10 years and a maximum fine of $10,000.[2]

Pointing up the argument which defendant makes, the following hypothetical situation is described in defendant's brief:

"To carry this point a step further, let us assume that there are two brothers who reside in Flint, Michigan; one is 'duly licensed' to *lawfully* sell, manufacture, dispense, administer, et cetera, narcot-

[1] PA 1952, No 266, §§ 2, 3 (CLS 1961, §§ 335.152, 335.153 [Stat Ann 1957 Rev §§ 18.1122, 18.1123]).

[2] PA 1937, No 343, as amended (CL 1948, § 335.51 *et seq.,* as amended [Stat Ann 1957 Rev and 1965 Cum Supp § 18.1071 *et seq.*]).

ic drugs by virtue of being a registered pharmacist. However, he does not own or operate a business. The other brother (appellant), is a 'person not having a license' to *lawfully* use, possess, sell, dispense, administer, et cetera, narcotic drugs.

"Now, these two brothers decide to pool their resources and make an *unlawful* purchase of a kilogram (2.3 [2.2?] pounds) of heroin. After making their purchase, each takes his share and begins 'dealing'. After a short time, both are arrested and charged with having made an *unlawful sale of heroin.* The 'duly licensed' brother sold *two ounces of heroin* to a young college student while the brother 'not having a license' sold *two small capsules of heroin* to an addict who has been addicted for many years. Thus, both made an *unlawful, illegitimate, illegal, or illicit sale of heroin.* At this point, however, the similarity ends. The 'duly licensed' brother was charged with, convicted of, and sentenced for *one offense,* viz., *unlawful sale of a narcotic drug,* whereas the brother 'not having a license' is charged with, convicted of, and sentenced for *two offenses,* viz., *unlawful sale of a narcotic drug and unlawful possession of a narcotic drug,* the latter being 'deemed to be included in every offense' of unlawful sale by 'any person not having a license.' Obviously, since there can be no 'license' to sell heroin (or unlawfully do any act for that matter), *both have committed the same offense or offenses.* But, based solely upon the possession or lack of a 'license' to *lawfully* sell other narcotic drugs, they are statutorily treated differently. The 'duly licensed' brother cannot possibly receive more than 10 years imprisonment for his offense whereas the brother 'not having a license' mandatorily receives a term of not less than 20 years imprisonment for the unlawful sale as well as a concurrent sentence of not more than 10 years imprisonment for the unlawful possession offense 'deemed to be included in every offense' of unlawful sale, et cetera, by 'any person

not having a license under the provisions of Act No 343 of the Public Acts of 1937, as amended.'

"Therefore, the basic question arises: Does this statutorily prescribed difference in provisions and penalties deny appellant, a 'person not having a license under the provisions of Act No 343 of the Public Acts of 1937, as amended,' equal protection of the laws in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States?"

The argument is ingenious, but, it is based upon a false assumption. It erroneously assumes that a registered pharmacist could not be charged with unlawful sale and possession of heroin under PA 1952, No 266. The fact is otherwise. A registered pharmacist who sells heroin could be charged under PA 1952, No 266, with unlawful sale and possession of a narcotic drug. The statute in question reads as follows:

"Sec. 2. Any person not having a license under the provisions of Act No. 343 of the Public Acts of 1937, as amended, being sections 335.51 to 335.78, inclusive, of the Compiled Laws of 1948, who shall sell, manufacture, produce, administer, dispense or prescribe any narcotic drug shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the State prison for a term of not less than 20 years nor more than life."

The defendant would have us read the word *license* as used in the foregoing statute to mean the piece of paper signed by the State director of drugs and drugstores. The defendant would have us believe that the statute intends to exempt from its operation all those persons to whom such a piece of paper has been issued. Taking such a view, the statute might well be regarded as unconstitutional since the mere possession of a piece of paper can

hardly be regarded as a kind of classification upon which equal protection of the laws can be predicated.

It is the function of an appellate court, however, so to construe statutory language as to uphold the constitutionality of acts of the legislature, if possible. And certainly we should not engage in strained or myopic interpretations of statutory language, in order to find legislative enactments to be unconstitutional.

A license is not a piece of paper. It may be evidenced by a piece of paper, but the piece of paper is not the license. A license is a permission granted by proper authority to do an act. There must be power in the licensing authority to permit the act to be done. There must be an act or acts with reference to which the license is given. PA 1952, No 266, exempts from its terms those persons and only those persons who are licensed to do what the act otherwise proscribes. This is the only logical meaning or interpretation of the act. Thus understood, and applied to the hypothetical case suggested by the defendant, the statute means "any person not having a license to sell heroin, who shall sell heroin, shall be deemed guilty of a felony, et cetera." Thus understood, both heroin-selling brothers in the defendant's hypothetical case would be guilty of and charged with the same crime.

It should be borne in mind that since the amendment by PA 1952, No 132, section 20 of PA 1937, No 343, does not prescribe any penalty for a person who sells narcotics without a license. Section 3 of the licensing act says that no person shall sell narcotics without first obtaining a license so to do from the State director of drugs and drugstores. Section 20 of the act now limits its application to persons duly licensed under the preceding provisions of the act. The act no longer contains within its four corners any penalty provision for persons

who sell narcotics without a license. Section 20 of
the licensing act can only apply to those violations
of the licensing act which, by definition, can be
committed by a licensed person. Section 20 can
never be read to punish a person for doing some-
thing which he is not licensed to do. It can only be
read as the penalty mandated for a licensed person
failing to do what a licensed person is required to
do, or doing what a licensed person is prohibited
from doing. The penalties of section 20 of the
licensing act are in addition to and separate from the
penalties of section 2 of PA 1952, No 266. It is
possible that the same act may constitute a violation
of both statutes. To put a parallel case, if a druggist
prescribes and administers a drug for one of his
customers, he may be guilty not only of practicing
medicine without a license but also of selling a
drug without a prescription. In the hypothetical
case suggested by the defendant, the drug sold is
heroin. A license to sell heroin cannot be obtained
from the State of Michigan because Federal laws
have pre-empted the field under the commerce clause
of the United States Constitution[3] taking away State
authority to do so. The point is made well in the
memorandum brief filed by the people in this cause.[4]

[3] US Const, art 1, § 8.—Reporter.

[4] "Appellee submits, however, that the first premise of appellant
does not *necessarily* follow, and further submits that there is no
classification. There is no legitimate traffic in heroin, the substance
herein involved. Under 18 USC § 1402, all heroin must be sur-
rendered to the secretary of the treasury:

" 'Any heroin lawfully possessed prior to the effective date of
this act shall be surrendered to the secretary of the treasury, or
his designated representative, within 120 days after the effective date
of the act, and each person making such surrender shall be fairly
and justly compensated therefor. The secretary of the treasury, or
his designated representative, shall formulate regulations for such
procedure. All quantities of heroin not surrendered in accordance
with this section and the regulations promulgated thereunder by
the secretary of the treasury, or his designated representative, shall
by him be declared contraband, seized, and forfeited to the United
States without compensation.' *  *  *

"Under 21 USC § 173, no opium may be brought into the United
States for the purpose of manufacturing heroin:

A druggist who sells heroin would be guilty of violating both of the statutes involved in this case. He would have sold a narcotic drug without a license since the State of Michigan had given him no permission to sell heroin. In addition to that, he would

---

" 'It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction; except that such amounts of crude opium and coca leaves as the commissioner of narcotics finds to be necessary to provide for medical and legitimate uses only may be imported and brought into the United States or such territory under such regulations as the commissioner of narcotics shall prescribe, but no crude opium may be imported or brought in for the purpose of manufacturing heroin.' * * *

"It is from a reading of the above Federal citations that it can clearly be seen that heroin is withdrawn from general use and that there is no legitimate traffic in heroin.

"Since the enactment of the foregoing Federal laws, Michigan cannot thereafter legitimatize the sale of heroin. Federal laws have pre-empted the field, taking away State authority so to do, under the commerce clause of the United States Constitution. Any State law allowing the general sale of heroin would conflict with the Federal laws and therefore would be invalid. *Leisy* v. *Hardin* (1890), 135 US 100 (10 S Ct 681, 34 L ed 128).

"A license to sell heroin cannot be obtained from the State of Michigan. In effect then, the sale of heroin is prohibited and not just regulated.

"It is upon the foregoing prohibition that appellee submits that any person selling heroin in Michigan would be an unlicensed person. Going back one step further, PA 1952, No 266 (CLS 1961, § 335.151 *et seq.* [Stat Ann 1957 Rev § 18.1121 *et seq.*]) is in part entitled, 'An act to suppress the illegitimate use, * * * sale * * * in narcotic drugs.'

"Section 2 of Act No 266 (CLS 1961, § 335.152 [Stat Ann 1957 Rev § 18.1122]) might be read as follows:

" 'Any person not having a license * * * .(so to do) * * * who shall sell * * * any narcotic drug shall be deemed guilty of a felony.'

"If one refers back to PA 1937, No 343, as amended (CL 1948, § 335.51 *et seq.*, as amended [Stat Ann 1957 Rev and Stat Ann 1965 Cum Supp § 18.1071 *et seq.*]), which provides for licensing, it is clear that provision is made only for the legitimate use of narcotics: sections 6, 7 (CLS 1961, §§ 335.56, 335.57 [Stat Ann 1957 Rev §§ 18.1076, 18.1077]). Section 3 explicitly requires authorization to sell narcotics (CLS 1961, § 335.53 [Stat Ann 1957 Rev § 18.1073]). Section 3 provides that specific licensing must be granted:

" 'No person shall * * * sell * * * any narcotic drugs without having first obtained a license *so to do.* * * *'

"In summarizing, since there can be no license to sell heroin, and Michigan has not issued a license to sell heroin, any person selling heroin in Michigan is an unlicensed person. Conversely, no one can legitimately be licensed to sell heroin so as to fall within the exclusion of PA 1952, No 266 and avoid prosecution thereunder."

have dispensed a narcotic drug without a prescription, which as a licensed person he is prohibited from doing. But even if a druggist were to sell heroin on prescription of a physician, he would be guilty of violation of PA 1952, No 266, since his license to sell narcotic drugs cannot be broader than the power of the licensing authority to grant permission. And since the State of Michigan has no authority to grant him permission to sell heroin, every such sale must be the act of an unlicensed person. Defendant's constitutional argument is without merit and his conviction should be sustained.

Dethmers, C. J. and Black, J., concurred with Brennan, J.

O'Hara, J. (*concurring in affirmance*). I regret my inability to join in the opinion of either of my colleagues.

My disagreement with Justice Brennan results from his acceptance of the theory that there is no classification of "licensed" and "unlicensed" made in the statutes here under consideration.[*]

I agree rather with the statement in the majority opinion of the Court of Appeals (*People* v. *Harper,* 1 Mich App 480, 482):

"The precise question for decision is whether the classification 'licensed' and 'unlicensed' is reasonable."

Justice Adams agrees that this is the issue in virtually identical language:

"Is the classification reasonable under the police power?"

My disagreement with Justice Adams stems from his negative answer to the posed question. I hold

---

[*] See citations *ante,* p 444.—Reporter.

the classification made to be a reasonable exercise of the police power of the State, and, hence, not repugnant to the equal protection clauses of the State and Federal Constitutions. (US Const, Am 14; Mich Const 1963, art 1, § 2.)

I base my conclusion as to the Federal question upon the cited excerpt from *McGowan* v. *Maryland*, 366 US 420, 425 (81 S Ct 1101, 6 L ed 2d 393):

"The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective."

As correctly noted by the majority opinion of the Court of Appeals (p 484):

"The licensing act is aimed primarily at safeguarding and regulating legitimate trade of narcotics. The act under which defendant was convicted and sentenced is directed solely at suppressing illegal traffic in narcotics. The purpose of the two acts is entirely different."

Certainly the classification made is eminently relevant to the State's objective. No lengthy apologia therefor need be written. The social consequences of illicit narcotics traffic is not confined to the immediate dispensation of the concerned narcotic. A tidal wave of social evils follows in its wake. The problems of enforcement are fundamentally different in the licit and illicit trade. Appellant's ingenious hypothet is untenable because it presents a problem with which this Court need not here concern itself. In a similar case involving the same type of claimed constitutional infirmities a hypothetical situation was presented to this Court and brought this succinct observation unanimously:

"The Court will not go out of its way to test the operation of a law under every conceivable set of circumstances. * * * Constitutional questions

are not to be dealt with in the abstract." *General
Motors Corporation* v. *Attorney General,* 294 Mich
558, 568 (130 ALR 429).

If and when a licensee who may have taken to
the streets as a pusher, or otherwise is alleged to
have violated the terms of the statute under which
defendant was convicted and sentenced, and intro-
duces in defense thereof his license to dispense
narcotics under the terms of the licensing act is
the proper time to deal with appellant's abstract
contentions.

I would affirm the Court of Appeals.

Kelly, J., concurred with O'Hara, J.

Adams, J. (*dissenting*).  Johnny Harper was con-
victed on a two-count information charging him with
violation of PA 1952, No 266, §§ 2, 3 (CLS 1961,
§§ 335.152, 335.153 [Stat Ann 1957 Rev §§ 18.1122,
18.1123]).  Act No 266 mandates a minimum sen-
tence of 20 years for sale of narcotics.  He was
sentenced to 20–30 years for sale and 8–10 years
for possession.  Defendant maintains that had he
been a druggist or other person licensed under PA
1937, No 343, as amended (CL 1948, § 335.51 *et seq.,*
as amended [Stat Ann 1957 Rev and 1965 Cum Supp
§ 18.1071 *et seq.*]), he would have been charged un-
der that act for the very same offenses with which
he was charged, but upon conviction he would have
been sentenced to "imprisonment in the State prison
for *not more than 10 years,*" the maximum sentence
for sale under Act No 343.  Defendant maintains he
has been denied the equal protection of the law.

## I. The Issue of Classification.

Upon oral argument, the prosecutor contended
that this case does not involve any classification be-

cause under 18 USCA, § 1402, all heroin must be surrendered to the secretary of the treasury. It was argued there can be no legitimate traffic in heroin.

PA 1937, No 343, § 2, as amended by PA 1952, No 132 (CLS 1961, § 335.52 [Stat Ann 1957 Rev § 18.1072]), provides:

*"It shall be unlawful for any person duly licensed* under the provisions of this act *to* manufacture, possess, have under his control, *sell,* prescribe, administer, dispense, or compound *any narcotic drug, except as authorized in this act."* (Emphasis supplied.)

Whether there can be any legitimate traffic in heroin is immaterial. If the Federal law forbids all traffic in heroin, then certainly State law cannot authorize use of the drug. It follows that any use or traffic in heroin would be unauthorized and an offense under the above section.

Assuming a sale of heroin by a person licensed under the act, section 20, the penal section (CLS 1961, § 335.70 [Stat Ann 1957 Rev § 18.1090]), reads:

*"Any person duly licensed under the preceding provisions of this act who violates any provision of this act shall be guilty of a felony, punishable by imprisonment* in the State prison *for not more than 10 years* or by a fine of not more than $10,000.00 or by both such fine and imprisonment."* (Emphasis supplied.)

The test of guilt under the act is not whether the licensed person can sell heroin but whether he is licensed. The law does apply to a class—"Any person duly licensed"—and consequently classification does exist under PA 1937, No 343, as amended.

II. THE ISSUE OF EQUAL PROTECTION.

Is the classification reasonable under the police power? PA 1937, No 343, as amended, is a dual

purpose statute. It provides for the licensing of persons to handle narcotic drugs in a lawful manner. Such regulation is a familiar exercise of the police power, regularly utilized in numerous fields for the protection of the public, such as in the licensing of dentists, doctors, lawyers, engineers, plumbers, and so on. Such power to license and regulate is not in any way in question here. It must be noted, however, that *the law does not license the commission of criminal acts.*

The unusual feature of PA 1937, No 343, as amended by PA 1952, No 132, is that its penal provisions are set up to provide separate criminal offenses for persons within a restricted class. The offenses are not different offenses from those under PA 1952, No 266. The acts prohibited are identical with those under PA 1952, No 266.*

In *Rinaldi* v. *Yeager,* 384 US 305 (86 S Ct 1497, 16 L ed 2d 577), decided May 31, 1966, the United States Supreme Court considered a New Jersey statute that provided for deduction from a prisoner's pay of 20¢ a day, five days a week, to repay the cost to the county of a transcript provided to the prisoner for his appeal. The law applied only to prisoners.

---

* Johnny Harper was convicted under the following provisions of Act No 266:

"Sec. 2. *Any person not having a license under the provisions of Act No 343* of the Public Acts of 1937, as amended, being sections 335.51 to 335.78, inclusive, of the Compiled Laws of 1948, *who shall sell,* manufacture, produce, administer, dispense or prescribe *any narcotic drug shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment* in the State prison *for a term of not less than 20 years* nor more than life.

"Sec. 3. *Any person not having a license as required under the provisions of Act No 343* of the Public Acts of 1937, as amended, being sections 335.51 to 335.78, inclusive, of the Compiled Laws of 1948, *who shall possess* or have under his or her control *any narcotic drug* shall be deemed guilty of a felony, and upon conviction thereof, for the first offense shall be punished by imprisonment for not more than 10 years, and a fine or not more than $5,000.00 * * * The offenses set forth in this section and in section 4 shall be deemed to be included within every offense charged as a violation of section 2 of this act." (Emphasis supplied.)

In holding the statute to violate the equal protection clause, the Court said (pp 308, 309):

"The equal protection clause requires more of a State law than nondiscriminatory application within the class it establishes.  *  *  *  It also imposes a requirement of some rationality in the nature of the class singled out.  To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. 'The Constitution does not require things which are different in fact  *  *  * to be treated in law as though they were the same.' *  *  *  Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends.  But the equal protection clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' "

In the case of *Rucker* v. *State* (1961), 170 Tex Crim 487 (342 SW2d 325), under a city ordinance, as controlled by statute, a $25 fine was the maximum penalty assessable against peddlers entering premises of another and refusing to leave when ordered to do so.  Any person other than a peddler, salesman, or solicitor could be fined $200 for the same offense.  The court of criminal appeals held the ordinance void and said (pp 488, 489):

"Under this statute, as well as under the ordinance in question, the maximum punishment which may be meted out to a peddler who enters the premises of another and refuses to leave, after being notified or ordered to do so by one in lawful occupancy of said premises, is a fine of $25; whereas the ordinance provides that 'any other person' (one who is not a peddler, salesman or solicitor) may be fined $200 for the same act and failure.  *  *  *

"Unequal treatment of persons under a State law which is founded upon unreasonable and unsubstan-

tial classification constitutes discriminatory State action and violates both the State and Federal Constitutions. * * *

"There appears no reasonable and substantial classification of persons which justifies the imposition of a $25 fine upon peddlers, salesmen, and solicitors and a $200 fine upon all other persons for the same act."

See, also, *Mitchell* v. *State* (1946), 157 Fla 121 (25 S2d 73); *People* v. *Simmons* (1927), 130 Misc 821 (226 NYS 397).

While the classifications imposed by Acts Nos 343 and 266, as amended, have a rational basis from the standpoint of insuring proper and healthful use of drugs, the differences in penalties imposed by those acts cannot be justified on that, or any other, rationale. The effect of the acts is to accord more lenient punishment to those who might be presumed, because of their education, training and background, to understand better than the average individual the need to prohibit certain conduct. The creation of a special licensed class to deal with drugs is of obvious importance to our present society, but favored treatment to that class for violating criminal proscriptions in its field of special knowledge is absurd. It is as if a special law were to deal more leniently with all criminal acts committed by lawyers than do the laws which apply to laymen because lawyers are licensed and presumed to be learned in the law!

Section 2 of PA 1952, No 266, is unconstitutional because in violation of the equal protection provision of the Fourteenth Amendment to the Constitution of the United States and article 1, § 2, of the Michigan Constitution of 1963. Harper does not claim his conviction under section 3 subjected him to any greater punishment than the maximum provided by section 20 of PA 1952, No 132. The sentence im-

posed under this count of the information was imprisonment of 8 to 10 years. Harper is, therefore, in no position to raise the question of constitutionality of section 3 under the sentence imposed on him. While the statutory presumption of section 3 that unlawful possession of narcotic drugs "shall be deemed to be included within every offense" under section 2 of PA 1952, No 266, must fall with section 2, there is no showing upon the record before us that Harper's conviction under section 3 resulted from or was based upon such presumption. The defendant-appellant should be discharged from the sentence imposed upon him under section 2 of PA 1952, No 266.

T. M. Kavanagh and Souris, JJ., concurred with Adams, J.