PEOPLE v AUER

Docket No. 54629. Argued October 8, 1974 (Calendar No. 1).—Decided April 7, 1975. Rehearing denied 394 Mich —.

Daniel Auer was charged with selling marijuana in violation of MCLA 335.152; MSA 18.1122. Prior to the commencement of trial, on motion of defense counsel, the Bay Circuit Court, John X. Theiler, ·J., amended the information to add a count of possession of marijuana in order that defendant might plead guilty to the added count. Defendant's plea of guilty to the added count was accepted. Defendant was tried and convicted by a jury on the original charge. The Court of Appeals, Mc-Gregor, P. J., and Bronson and Targonski, JJ., affirmed the conviction but remanded for resentencing under § 41 of the Controlled Substances Act of 1971, MCLA 335.341; MSA 18.1070(41) (Docket No. 11983). Defendant appeals, contending: (1) that the trial court erred when it refused to allow certain impeachment testimony to be presented to the jury, (2) that the trial court erred in failing to grant a mistrial because of prejudicial answers given by a key witness, (3) that certain statements made in final argument by the prosecuting attorney constituted reversible error, (4) that certain instructions to the jury were erroneous, (5) that there was entrapment as a matter of law, (6) that representation by counsel was constitutionally inadequate, (7) that the Court of Appeals erred in ordering resentencing under the Controlled Substances Act, (8) that the trial court committed reversible error in failing to instruct the

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses §§ 675, 767 *et seq.*
[2] 58 Am Jur, Witnesses § 866.
[3] 75 Am Jur 2d, Trial § 317.
   76 Am Jur 2d, Trial § 1080.
[4] 75 Am Jur 2d, Trial §§ 609, 714, 718.
[5, 6] 21 Am Jur 2d, Criminal Law §§ 143–145.
   25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 43, 46, 47.
[7] 75 Am Jur 2d, Trial §§ 653, 654, 915, 916.
[8] 21 Am Jur 2d, Criminal Law § 309.
[9] 21 Am Jur 2d, Criminal Law § 569.
[10] 75 Am Jur 2d, Trial §§ 876–882.

jury on the lesser included offense of possession of marijuana. *Held:*

1. The trial court, aware of the collateral nature of defendant's inquiry, did not abuse its discretion in refusing to permit the impeachment testimony in question.

2. The nature of the key witness's testimony did not unduly prejudice defendant and warrant declaration of a mistrial.

3. The prosecutor's argument did not give rise to a miscarriage of justice.

4. There was no miscarriage of justice in the jury instructions.

5. The "objective" test of entrapment adopted in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), applies prospectively, and therefore does not apply in this case. There was no entrapment as a matter of law under the "subjective" test formerly in effect.

6. No instance of serious error of defense counsel was noted by defendant and there was no violation of his constitutional rights.

7. The Controlled Substances Act, § 61 (MCLA 335.361; MSA 18.1070[61]), provides that a sentence in excess of that prescribed in the act shall not be imposed on a person who, before the effective date of the act, committed an offense similar to one set out in the act but had not yet been sentenced. Resentencing under the new act is not a conviction under it, and it is within the legislative prerogative so to prescribe a sentence.

8. Absent the plea of guilty, the trial court would have been obligated, upon proper request, or objection, to instruct on lesser included offenses; given the plea, no instruction on possession was required.

Conviction affirmed.

1. CRIMINAL LAW—WITNESSES—IMPEACHMENT—DISCRETION.

Refusing to permit impeachment testimony to contradict the testimony of a key witness that she had not been in a certain bar on an occasion five years previously when a disturbance had been created and to establish the key witness's poor reputation in the community by "gossip and rumors" was not an abuse of discretion, because of the collateral nature of the inquiry.

2. CRIMINAL LAW—WITNESSES—PREJUDICE—MISTRIAL.

Denial of a motion for mistrial grounded on prejudicial answers given by a key witness was not error where the record shows that the nature of the key witness's testimony did not unduly

prejudice defendant although that witness was an experienced witness who at certain times anticipated the reach of defense questioning, giving nonresponsive and no doubt unwanted answers.

3. CRIMINAL LAW—ARGUMENT OF PROSECUTOR—MISCARRIAGE OF JUSTICE.

A prosecutor's argument did not give rise to a miscarriage of justice where the statements complained of by defendant were not specifically objected to by defense counsel, certain of the statements were invited by defendant's closing argument, and the trial court meticulously instructed the jury that it was the court's role to instruct on the law and that statements or arguments of attorneys are not evidence (MCLA 769.26).

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—MISCARRIAGE OF JUSTICE.

There was no miscarriage of justice in instructions to the jury where the court read the language of the sale of marijuana statute and the people objected that the instructions thus placed the issue of penalty before the jury, but the defendant made no objection in any respect (MCLA 335.152).

5. CRIMINAL LAW—DEFENSES—ENTRAPMENT—OBJECTIVE TEST—RETROSPECTIVE APPLICATION.

The purpose of the "objective" test for entrapment adopted by recent case law is to focus upon and discourage as a matter of policy police actions which are reprehensible under the circumstances, and retrospective application would not serve to implement the purpose; therefore, in view of the purpose of the new rule, the general reliance on the old rule, and the effect on the administration of justice, the rule shall apply prospectively *(People v Turner,* 390 Mich 7 [1973]).

6. CRIMINAL LAW—DEFENSES—ENTRAPMENT—QUESTION OF FACT.

There was no entrapment as a matter of law under the "subjective" test where the people's principal witness gave testimony the thrust of which was to indicate that the criminal intent to sell marijuana originated in the mind of the defendant, and the defendant and his witnesses contradicted this account; the question was properly one for the jury.

7. DRUGS AND NARCOTICS—DEFENSES—PROCURING AGENT THEORY—INSTRUCTIONS TO JURY—FAILURE TO OBJECT.

Omission of an instruction to the jury on the "procuring agent" theory in a prosecution for sale of marijuana was not error where defendant's own testimony indicated that he obtained marijuana for his own personal use, by his own admission he

was not a mere conduit, and he neither requested that instruction nor objected to the omission of that instruction.

8. Criminal Law—Attorney and Client—Constitutional Law.

Defendant's constitutional right of representation by counsel at his trial for sale of marijuana was not violated where his attorney conducted the defense in a thorough and controlled manner, extensively cross-examining prosecution witnesses and effectively presenting and arguing defendant's case to the jury, and where no instance of serious error of counsel is noted by the defendant.

9. Criminal Law—Sale of Marijuana—Sentence—Statutes—Due Process.

There was no violation of due process where defendant was convicted of sale of marijuana under a statute which provided a 20-year minimum sentence and the Court of Appeals remanded for sentencing under a subsequent statute which provided for a lesser penalty for those not yet sentenced under the former statute; it is within the legislative power to prescribe penalties for statutory offenses, and a sentence under the new statute is not a conviction under it (MCLA 335.341, 335.361).

10. Criminal Law—Sale of Marijuana—Instructions to Jury—Lesser Included Offenses—Possession of Marijuana.

Failing to instruct the jury on the lesser included offense of possession of marijuana was not error where defendant, who was charged with sale of marijuana, requested that a count of possession of marijuana be added and then pled guilty to that count because, given the plea, no instruction on possession was required; absent the plea, the court would have been obligated, upon proper request, or objection, to instruct on lesser included offenses (MCLA 335.152).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene Penzien,* Prosecuting Attorney, and *Prosecuting Attorneys Appellate Service* (by *Howard C. Marderosian,* Special Assistant Attorney General), for the people.

*James J. Carras,* for defendant on appeal.

J. W. Fitzgerald, J. Defendant was charged

with selling marijuana on January 19, 1971 to a police undercover agent, Pamela Dinsmore, in violation of MCLA 335.152; MSA 18.1122. He was convicted by jury verdict. The Court of Appeals affirmed defendant's conviction in a brief per curiam opinion[1] but remanded for resentencing under § 41 of the new Controlled Substances Act, MCLA 335.341; MSA 18.1070(41) pursuant to *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972). We granted leave to appeal. Defendant raises 11 allegations of error. We affirm.

## Facts

Prior to the commencement of trial defense counsel made a motion to amend the information before the trial court to have a count of possession of marijuana added in order that defendant might plead guilty to the added count. The prosecutor informed the court and defense counsel that the people would not be satisfied with a plea to possession and wanted to go to trial on the charge of sale of marijuana. The court at this point informed defendant and his counsel that if they tendered a plea of guilty to possession of marijuana the prosecutor would still retain the right to go to trial on the charge of sale of marijuana. Prior to the acceptance of his plea, defendant was again informed that a plea of guilty to possession of marijuana would not dispose of the principle charge of sale of marijuana and that trial on that charge would proceed. Defendant's plea of guilty to pos-

---

[1] The Court of Appeals in its opinion only discusses one of the many issues raised by defendant and discussed in this opinion. Brief but dispositive discussion of the undiscussed issues would not only have been enlightening to this Court and the parties but might have rendered unnecessary our grant of leave to appeal.

session of marijuana was then accepted by the trial court.

At trial, Pamela Dinsmore, a police undercover agent, testified that she purchased two lids of marijuana from defendant on January 19, 1971, stating that she had made arrangements to purchase marijuana from him on the previous day. Prior to the transaction she had known defendant casually. She testified that defendant, on January 18, 1971, had indicated that he did not have any marijuana but stated that he would have some the next day. He told her to call him on the 19th regarding the purchase of marijuana. She called defendant and prearranged the purchase. Then, cooperating with the police, Dinsmore went to defendant's residence with the intention of purchasing one lid of marijuana.[2] She spent approximately 45 minutes at defendant's residence, during which defendant persuaded her to purchase a second lid of marijuana and completed the sale of the marijuana.

Linda Taylor, a friend of defendant who was at defendant's residence at the time of the sale, testified that Mrs. Dinsmore asked defendant if she could purchase marijuana and defendant said he could get her some. She indicated Mrs. Dinsmore initiated the purchase of a second lid of marijuana.

Defendant testified that in response to Mrs. Dinsmore's request for marijuana on January 18, 1971 he responded that he was not interested in selling marijuana to her. By his account he went out to purchase marijuana for his own use on the evening of the 18th and only sold to Mrs. Dinsmore on the 19th because she "begged" him and

_____

[2] A "lid" of marijuana in street parlance describes the amount of marijuana which would fit, levelled, in a recessed can lid. It consists of approximately one ounce of marijuana. Pamela Dinsmore paid defendant $10 for each lid of marijuana.

he wanted to "get her out of [his] hair". Defendant stated that he charged Pamela Dinsmore the same price which he had paid for the marijuana.

## I

Defendant first contends that the trial court erred when it refused to allow the testimony of an excused juror, Lois Vertako, to be presented to the jury. Juror Lois Vertako was excused when she recollected that she had had previous contact with key prosecution witness Pamela Dinsmore. Defendant contended at trial that the testimony of ex-juror Vertako should have been permitted into evidence for purposes of impeaching Pamela Dinsmore. In order to evaluate defendant's contention a separate record was made at trial. In this record witness Vertako testified that approximately a year earlier and for several years prior to that she had had occasional contact with witness Dinsmore on Saturday mornings at the Overpass Bar, a place where she had been employed. On one occasion certain members of the company witness Dinsmore kept created a disturbance and caused Lois Vertako difficulty. She further indicated that there was an unfavorable attitude toward witness Dinsmore by some of the patrons at the bar, although she acknowledged that Pamela Dinsmore stayed more or less with her own companions while at the bar.

Defense counsel asked witness Dinsmore during cross-examination whether she had been a party to creating a disturbance at the Overpass Bar some five years earlier. Mrs. Dinsmore denied that she had been a party to the creation of a disturbance. While she denied participation on this occasion, witness Dinsmore acknowledged that she had been to the Overpass Bar "once or twice". Defense

counsel subsequently sought to place ex-juror Vertako on the witness stand to impeach witness Dinsmore in two respects:

(1) to contradict the testimony of witness Dinsmore that she had not been in the Overpass Bar on the occasion five years previously when the disturbance had been created; and

(2) to establish the witness's poor reputation in the community.

The trial court refused to permit the ex-juror's testimony because the event which occurred some five years ago was not sufficiently relevant to witness Dinsmore's present credibility to gain admission. Inquiry with respect to reputation was refused when the court ascertained from witness Vertako that she merely overheard "gossip and rumors" at the bar where she worked and was only generally aware of an "unfavorable" attitude of some patrons of the bar toward witness Dinsmore. We cannot say that the trial court, aware of the collateral nature of defendant's inquiry, abused its discretion in refusing to permit the testimony of this witness.

II

Defendant's second contention is that the trial court erred in failing to grant a mistrial due to prejudicial answers given by key witness Pamela Dinsmore. Witness Dinsmore was an experienced witness who at certain times anticipated the reach of defense questioning, giving nonresponsive and no doubt unwanted answers. With respect to most such answers given by the witness, no objection was raised by defense counsel, although on one occasion with respect to an answer given, defense counsel did move for mistrial "on that answer". In

this instance the trial judge denied the defense motion. The cross-examination of witness Dinsmore covers some 65 pages of the trial court record. Review of this cross-examination confirms the trial court determination that the nature of the witness's testimony did not unduly prejudice defendant and warrant declaration of mistrial.

## III

Defendant next claims that certain statements made in final argument by the prosecuting attorney constituted reversible error. The statements complained of were not specifically objected to by defense counsel. Moreover, certain of the complained-of statements were invited by defendant's closing argument. The trial court meticulously instructed the jury that it was the court's role to instruct on the law and further indicated:

"Now, as I told you before, in making a decision you make it on the basis of the evidence in the case. Now, the evidence is the testimony as given by the witnesses. It is not the statements or arguments of the attorneys and that isn't evidence, but what the attorneys say and what they argue to you may be very helpful for your purposes in deciding what that evidence was, but their statements aren't evidence."

We conclude that prosecutorial argument did not here give rise to a miscarriage of justice within the meaning of that phrase as defined in *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). MCLA 769.26; MSA 28.1096.

## IV

Four allegations of error raised by defendant concern certain instructions given by the trial

court. It is defendant's contention that these instructions require reversal. One of the allegations made by defendant pertains to the trial court's reading of the language of the sale of marijuana statute, MCLA 335.152; MSA 18.1122. At trial the people alone objected to the reading of this statute on the ground that it incorrectly placed the issue of penalty before the jury. No objections were in other respects made by defendant. The other supposed instances of error for the most part strike us as picayune and certainly cannot be said to contaminate the instructions. It is apparent there was no miscarriage of justice. MCLA 769.26; MSA 28.1096.

## V

Defendant argues that the evidence in this case indicates the existence of entrapment as a matter of law, citing *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). The people counter that the test for entrapment set forth in *Turner* should be applied prospectively to police conduct arising after the date of the decision, thereby denying defendant the benefit, if any, from application of the "objective" test for entrapment set forth in *Turner.*

The test for determining whether a rule is to be applied retrospectively or prospectively is set forth in *People v Hampton,* 384 Mich 669, 674; 187 NW2d 404 (1971), as follows:

"The United States Supreme Court has discussed various factors to be used in determining whether a law should be applied retroactively or prospectively. There are three key factors which the Court has taken into account; (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the

administration of justice. See, *e.g., Linkletter v Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601); *Tehan v United States ex rel Shott* (1966), 382 US 406 (86 S Ct 459, 15 L Ed 2d 453)."

The purpose of the "objective" test for entrapment adopted in *Turner* is to focus upon and discourage as a matter of policy "actions of the police [which are] reprehensible under the circumstances", *Turner, supra,* 22. It is at once apparent that retrospective application of the rule of *Turner* would not serve to implement the purpose of the rule because the rule can only have a prospective effect upon police conduct. The justifiable reliance of law enforcement officials argues for prospective application. The ends of the administration of justice as well are best served by prospective application, for retrospective application would require in many cases new trials with the tremendous obstacle of reassembling now stale evidence. The salutary effects of the new rule in *Turner* are not of such nature as to require retrospective application. We conclude that the rule of *Turner* shall apply prospectively.

The existence of entrapment was submitted to the jury under instructions. The people's principle witness, Pamela Dinsmore, gave testimony, the thrust of which was to indicate that the criminal intent to sell marijuana originated in the mind of the defendant.[3] While defendant and his witnesses

---

[3] *See* with respect to the pre-*Turner* "subjective" test for entrapment, *People v Smith,* 296 Mich 176; 295 NW 605 (1941). Under this test entrapment existed only if the trier of fact determined that criminal intent did not originate in the mind of defendant but was rather the product of active measures on the part of the authorities "inspiring" criminal conduct. The authorities could furnish the opportunity to commit crime. They could not, however, be the prime motivating force respecting participation in criminal activity without "entrapping" the defendant. Pamela Dinsmore's testimony was such as to negate the existence of entrapment under the then-existing test.

contradicted this account, the question was jury-decided adversely to defendant. There was no entrapment as a matter of law, the question properly being for the jury under applicable pre-*Turner* law.

Defendant also argues that his theory that he was a procuring agent was not given to the jury in the instructions.[4] Defendant's own testimony, however, indicated that he obtained the marijuana for his own personal use. By his own admission he was not a mere conduit. Cognizant of such testimony and aware that defendant neither requested an instruction on the procuring agent theory nor objected to the omission of such an instruction, we find no error.

## VI

Defendant claims that the representation by counsel he enjoyed at trial was constitutionally inadequate. It is true that defense counsel had little time to prepare for trial. He conducted the defense, however, in a thorough and controlled manner, extensively cross-examining prosecution witnesses and effectively presenting and arguing defendant's case to the jury. No instance of serious error of counsel is noted by defendant. We find no violation of a constitutional right.

## VII

Defendant complains that the Court of Appeals erred in ordering defendant resentenced under

---

[4] The "procuring agent" defense was first acknowledged by Michigan courts as a valid defense in *People v Turner*, 38 Mich App 479; 196 NW2d 799 (1972), reversed on other grounds in *People v Turner*, 390 Mich 7, *supra*. This Court has not passed on the validity of the "procuring agent" defense. In view of our resolution of the issue under discussion we do not treat the validity of the defense herein.

§ 41 of the Controlled Substances Act of 1971, MCLA 335.341; MSA 18.1070(41), pursuant to *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972). Defendant's principal complaint is that the Court of Appeals by its action convicted defendant on a charge not made, thus violating due process. Defendant's contention is answered in § 61 of the Controlled Substances Act, MCLA 335.361; MSA 18.1070(61), where it is stated:

"(1) * * * If, before the effective date of this act, a person has committed an offense similar to an offense set out in chapter 4 but has not been sentenced as of that date, the sentencing judge shall not impose a sentence in excess of the penalty prescribed in chapter 4 [including MCLA 335.341; MSA 18.1070(41)] for the similar offense."

Defendant was convicted of sale of marijuana, a violation of MCLA 335.152; MSA 18.1122, and pursuant to *People v Lorentzen* and legislative mandate (see above) was resentenced in accordance with MCLA 335.341; MSA 18.1070(41), the pertinent section of the new act describing a "similar" offense. He was never convicted under that statute. It is within the legislative power to prescribe, as in this instance, penalties for statutory offenses. We find no violation of due process.

## VIII

Defendant complains that the trial court committed reversible error in failing to instruct the jury on the lesser included offense of possession of marijuana.[5] Defense counsel did point out to the

---

[5] Possession of marijuana was a lesser included offense of sale of marijuana by legislative definition in the now-superseded Uniform Narcotic Drug Act, 1937 PA 343 as amended. *See,* specifically, MCLA 335.153; MSA 18.1123.

trial court its failure to instruct. The trial court, however, refused to instruct on possession because defendant had already pled guilty to this offense prior to trial.[6]

In *Genesee Prosecutor v Genesee Circuit Judge*, 391 Mich 115; 215 NW2d 145 (1974), the authority of the trial judge to accept defendant's plea over the objection of the prosecuting attorney was discussed. Defendant's (there, Hoskins) plea of guilty in that case to manslaughter was accepted by the trial judge over the objection of the prosecution. An information charging murder was involved. The facts in *Genesee Prosecutor* involved, among others, the situation where a plea of guilty to a lesser included offense is accepted by the court. The Court commented as follows:

"Implicit in this controversy is Hoskins' expectation that if his plea of guilty to manslaughter is accepted he would not stand trial for murder. Hoskins would, upon compliance with the guilty plea procedures, have the right, without the consent of the prosecutor, to plead guilty to the charge of manslaughter as long as it was clear that, nevertheless, he must stand trial for murder." *Genesee Prosecutor, supra,* 119.

Defendant's plea to possession of marijuana was taken in accord with our prescription in *Genesee Prosecutor.* The applicability of the lesser included offense of possession was foreclosed by virtue of the plea. Defense counsel argued to the jury defendant's contention that he had pled guilty to possession and was in fact guilty of only possession and not sale. The jury clearly rejected defendant's contention. Absent the plea, the trial court would have been obligated, upon proper request, or objec-

---

[6] These circumstances are detailed more fully in the above recitation of facts.

tion, to instruct on lesser included offenses. Given the plea, no instruction on possession was required.

Affirmed.

T. G. KAVANAGH, C. J., and T. M. KAVANAGH, SWAINSON, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with J. W. FITZGERALD, J.