PEOPLE v STEWART (ON REHEARING)

Docket No. 55230. Argued December 10, 1974 (Calendar No. 5).—
Decided June 4, 1976, 397 Mich 1. Rehearing granted 398 Mich
951. Submitted on rehearing February 3, 1977 (Calendar No.
18).—Decided July 18, 1977.

Howard Stewart was convicted in Recorder's Court of Detroit,
Henry Heading, J., of sale and possession of heroin. Testimony
at trial showed that the heroin was delivered to a police agent
by a codefendant of Stewart; the codefendant, known as Junior,
was not apprehended. The Court of Appeals, J. H. Gillis, P. J.,
and Bashara and O'Hara, JJ., affirmed with sentence modified
(Docket No. 12243). The Supreme Court affirmed, but on the

References for Points in Headnotes

[1] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 40, 41.

[2] 21 Am Jur 2d, Criminal Law §§ 189, 546.

Propriety of general sentence covering several counts in informa-
tion or indictment not exceeding in aggregate the sentences
which might have been imposed cumulatively under several
counts. 91 ALR2d 511.

[3–5, 11] 21 Am Jur 2d, Criminal Law §§ 165, 166.

[3, 11] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 28, 48.

[6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 16.

[6, 7] 30 Am Jur 2d, Evidence § 1022.

75 Am Jur 2d, Trial §§ 166, 167, 708.

[7] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 43, 46, 47.

Admissibility, in prosecution for illegal sale of narcotics, of evidence
of other sales. 93 ALR2d 1097.

Modern status of the law concerning entrapment to commit narcot-
ics offense-state cases. 62 ALR3d 110.

[8] 29 Am Jur 2d, Evidence §§ 708, 713.

[9] 21 Am Jur 2d, Criminal Law § 614.

[9, 10] Length of sentence as violation of constitutional provisions
prohibiting cruel and unusual punishment. 33 ALR3d 335.

[10] 21 Am Jur 2d, Criminal Law § 614.

25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 17, 48.

Review for excessiveness of sentence in narcotics case. 55 ALR3d
812.

[12] 75 Am Jur 2d, Trial §§ 607, 906.

[13] 21 Am Jur 2d, Criminal Law §§ 185–187, 189, 212.

defendant's motion granted a rehearing on issues raised on appeal but not discussed in its opinion. *Held:*

1. The same heroin was possessed and sold by the defendant in a single continuous transaction. There was no evidence of possession distinct and apart from the sale. From the evidence adduced at this trial, the illegal possession of heroin was an included offense of the illegal sale of heroin; the jury in this case necessarily found the defendant guilty of possession of the heroin when they found him guilty of its sale. The defendant may not be doubly punished by convicting him of possession which in this case was a necessary prerequisite for the very sale of which he was also convicted.

2. The concept of "double punishment" as prohibited by the Double Jeopardy Clause not only applies to the sentence, but also includes the conviction. The possession conviction, if allowed to stand, could punish the defendant in several ways, including parole considerations, impeachment at subsequent trials, and treatment as a habitual offender. The conviction of the greater offense, sale of heroin, is affirmed, and the conviction of possession of heroin is vacated.

3. The lack of a narcotics license is a necessary element of any crime involving the unlawful sale of narcotics, but the record discloses that the defendant during trial in effect stipulated that he had no such license, and did not object to an instruction to the jury that he had made the stipulation. Furthermore, at the time of trial it was legally impossible for anyone to obtain a license either to possess or to sell heroin in Michigan.

4. The defense was that the defendant did not commit the offenses charged. Failure to instruct the jury *sua sponte* on the possible defenses of entrapment and a procuring agent theory was not erroneous. The defendant did not raise either issue at trial, did not object to the instructions given, and did not raise these issues in the Court of Appeals. The instructions on those defenses, if given *sua sponte,* could have interfered with the defendant's case, and given credence to the people's case.

5. The people are not obligated to produce an unindorsed res gestae witness who is an accomplice. Therefore, the defendant had no reason to expect the prosecution to produce the man known as "Junior". The defense never asked that he be produced or requested a showing of efforts to find him. The defendant's contention that the prosecution's failure to show due diligence in finding Junior is without merit.

6. The dominant test governing constitutional claims of cruel and unusual punishment is whether the punishment is in

excess of any that would be suitable to fit the crime. The prescribed penalty of a mandatory minimum imprisonment of 20 years is not in excess of any that would be suitable to fit sellers of heroin. It is not so excessive that it shocks the conscience.

Affirmed as to conviction of sale of heroin; reversed as to conviction of possession of heroin.

Justice Levin, who was joined by Chief Justice Kavanagh, concurred in part and dissented in part. The instructions to the jury were subject to the interpretation that the jury could not convict of one offense and acquit of the other, but could only acquit of both offenses. The jury may have convicted Stewart of both offenses under the impression that in order to render a verdict of guilty at all it must convict of both offenses. The jury's verdict constitutes a finding that the defendant was at least guilty of possession and therefore the Court may properly affirm his conviction of the lesser offense, with an option in the prosecutor to have a new trial on both charges if he is persuaded that the ends of justice would be better served by retrial for sale.

46 Mich App 282; 207 NW2d 907 (1973) affirmed in part, reversed in part.

### Opinion of the Court

1. Drugs and Narcotics—Delivery—Possession—Included Offenses.

   Illegal possession of heroin is an included offense of illegal sale of the same heroin where the facts developed at trial show the circumstance of possession is not severable or apart from the sale, there was no evidence of possession distinct and apart from the sale, and the jury found the defendant guilty of the sale.

2. Criminal Law—Constitutional Law—Double Jeopardy—Double Punishment.

   The state cannot divide a single offense into several parts according to time and conduct and base separate prosecutions upon and impose separate punishments for the various necessary divisions of that single crime (US Const, Am V; Const 1963, art 1, § 15).

3. Drugs and Narcotics—Delivery—Possession—Constitutional Law—Double Punishment.

   Conviction of both delivery of heroin and the included offense of possession of the same heroin which was proven as a necessary

prerequisite or the *sine qua non* for the sale violates the constitutional protection against double punishment (US Const, Am V; Const 1963, art 1, § 15).

4. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—DOUBLE PUNISHMENT.

The guarantee against double jeopardy protects against not only a second prosecution for the same offense, but also against multiple punishments for the same offense (US Const, Am V; Const 1963, art 1, § 15).

5. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—DOUBLE PUNISHMENT.

The double punishment which is constitutionally proscribed for one offense includes another conviction of the same offense and not only another sentence, because the second conviction punishes the defendant in several ways including parole considerations, impeachment at subsequent trials, and treatment as a habitual offender (US Const, Am V; Const 1963, art 1, § 15).

6. DRUGS AND NARCOTICS—HEROIN—LICENSES—ELEMENTS OF CRIME.

Lack of a narcotics license is a necessary element of any crime involving the unlawful sale of narcotics, but the prosecution did not fail to meet its burden of proof in a trial for illegal delivery of heroin where the defendant during trial, in effect, stipulated that he had no such license; the defendant did not object to an instruction to the jury that he had made the stipulation; and at the time of trial it was legally impossible for anyone in the state to obtain a license either to possess or to sell heroin.

7. DRUGS AND NARCOTICS—HEROIN—DEFENSES—INSTRUCTIONS TO JURY—ENTRAPMENT—PROCURING AGENT.

Failure to instruct a jury *sua sponte* as to possible defenses of entrapment and a procuring agent theory in a trial for possession and delivery of heroin was not erroneous where the defense at trial was that the defendant did not commit the offenses charged, the defendant did not raise either issue at trial, did not object to the instructions given, and did not raise the issues in the Court of Appeals.

8. CRIMINAL LAW—RES GESTAE WITNESSES—INDORSEMENT—ACCOMPLICES.

The people are not obligated to produce an unindorsed res gestae witness who is an accomplice; therefore a defendant had no reason to expect the prosecution to produce a codefendant who was not apprehended (MCL 767.40; MSA 28.980).

9. CRIMINAL LAW—CONSTITUTIONAL LAW—CRUEL AND UNUSUAL PUN-
   ISHMENT.

   The dominant test governing a claim of cruel and unusual
   punishment is whether the punishment is in excess of any that
   would be suitable to fit the crime (US Const, Am VIII; Const
   1963, art 1, § 16).

10. DRUGS AND NARCOTICS—HEROIN—CONSTITUTIONAL LAW—CRUEL
    AND UNUSUAL PUNISHMENT—DELIVERY.

    A 20-year minimum sentence for the sale of heroin is not uncon-
    stitutional as a cruel and unusual punishment: the prescribed
    mandatory minimum is not in excess of any that would be
    suitable to fit sellers of heroin; it is not so excessive that it
    shocks the conscience (US Const, Am VIII; Const 1963, art 1,
    § 16; MCL 335.152; MSA 18.1122).

CONCURRING IN PART AND DISSENTING IN PART

KAVANAGH, C. J., and LEVIN, J.

See headnotes 1–8.

11. DRUGS AND NARCOTICS—DELIVERY—POSSESSION—INSTRUCTIONS TO
    JURY.

    *A jury in trial for both delivery and possession of the same*
    *heroin may have understood the instruction, "you may find the*
    *defendant not guilty", to mean that any judgment of acquittal*
    *would be an acquittal of both offenses and therefore if there*
    *was to be any conviction at all it must be of both offenses; the*
    *jury may not have understood that it had a choice of finding*
    *the defendant not guilty of one offense and guilty of the other.*

12. CRIMINAL LAW—TRIAL—INSTRUCTIONS TO JURY.

    *The responsibility for a properly conducted trial rests on all the*
    *participants, including the prosecuting attorney and trial judge,*
    *even in the absence of objection by defense counsel to instruc-*
    *tions to the jury.*

13. DRUGS AND NARCOTICS—DELIVERY—POSSESSION—LESSER INCLUDED
    OFFENSES—INSTRUCTIONS TO JURY.

    *A verdict convicting a defendant of both delivery of heroin and*
    *the included offense of possession of the same heroin which was*
    *proven as a necessary prerequisite for the sale constitutes a*
    *finding that the defendant was at least guilty of possession and*
    *therefore his conviction of the lesser offense may properly be*
    *affirmed where the jury may have convicted the defendant*
    *under the impression from the instructions that it could only*

*acquit the defendant of both offenses and could not convict him
of one and acquit him of the other.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training & Appeals, and *Robert A. Reuther,* Assistant Prosecuting Attorney,
for the people.

*State Appellate Defender Office* (by *Norris J.
Thomas, Jr.)* for defendant.

Blair Moody, Jr., J. Defendant Howard Stewart
was convicted on March 8, 1971, of sale and possession of heroin in violation of MCLA 335.152;
MSA 18.1122, and MCLA 335.153; MSA 18.1123.
The defendant was sentenced from 20 to 25 years
and from 7-1/2 to 10 years respectively.

Defendant appealed his conviction as a matter of
right. The Court of Appeals affirmed defendant's
conviction in a brief opinion. That Court held that
certain statements allegedly made by a non-produced codefendant were admissible against the
defendant under the co-conspirators exception to
the hearsay rule. It also held that sale and possession, while having common elements in certain
cases, are nonetheless separate crimes. Therefore,
it concluded double jeopardy (more aptly "double
punishment") problems do not arise when the
charges of possession and sale of narcotics are
joined in a criminal prosecution arising out of the
same transaction. *People v Stewart,* 46 Mich App
282; 207 NW2d 907 (1973).[1]

This Court originally granted leave to appeal in

---

[1] In light of *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972),
and GCR 1963, 820.1(7), the Court of Appeals did order the minimum
sentence imposed for the possession of the heroin reduced to 6 years,
8 months.

this matter on March 29, 1974. On June 4, 1976, it affirmed both the trial court and Court of Appeals. *People v Stewart,* 397 Mich 1; 242 NW2d 760 (1976). This Court's majority limited its discussion of defendant's appeal in that opinion to a single issue: the aforementioned hearsay exception problem.

Thereafter, in light of our decision in *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), this Court on December 9, 1976, decided to grant the defendant a rehearing "limited to issues raised on appeal but not discussed in the opinion of the Court released on June 4, 1976". 398 Mich 951 (1976).

Those issues are as follows:

1) Whether conviction of both sale and possession of the same heroin, upon proof of sale incident to possession, was constitutionally proscribed double punishment.

2) Whether the prosecution failed to meet its burden of proof to establish that the defendant did not have a license to either possess or sell heroin.

3) Whether the trial court erred in not instructing the jury *sua sponte* on two possible defenses:

(a) That the defendant was entrapped as a matter of law, or;

(b) That the defendant was only acting as a procuring agent in the alleged transaction.

4) Whether the prosecution failed to show "due diligence" in attempting to produce defendant's named codefendant.

5) Whether the mandatory 20-year minimum sentence received by the defendant for the sale of heroin constitutes cruel and unusual punishment, thus rendering the statute unconstitutional and requiring that defendant's sentence be vacated.

We find merit only in the first issue. We there-

fore reverse and vacate defendant's conviction of possession of heroin and affirm his conviction of sale of heroin.

I

Justice LEVIN succinctly set out the pertinent facts in his dissenting opinion in the original case:

"The people made their case entirely from the testimony of LaTonia Boldin, an unpaid civilian undercover narcotics agent working for the Detroit Police Department. She testified that she went to Stewart's restaurant, introduced herself as 'Candy', and told him she needed a job to support her 'habit'. Stewart asked her when she could begin work, and she said as soon as she got a 'fix'. Stewart first offered her marijuana, which she rejected because it was 'too mild', and then agreed to sell her 'some P's' [heroin] for $20.

"Boldin testified that Stewart left the restaurant and entered an apartment building across the street. While he was gone, Boldin talked 'for 10 or 15 minutes' with a man who introduced himself as 'Junior'. During the conversation they discussed narcotics.

"Boldin testified that when Stewart returned to the restaurant he went directly to the kitchen and called 'Junior'. She said that she did not see Stewart carrying anything or give anything to 'Junior'. She could see that Stewart and 'Junior' were talking, but could not hear what they said.

"Stewart remained in the kitchen. 'Junior' rejoined Boldin and sold her heroin for $20." (Footnotes omitted.) 397 Mich 1, 11–12.

There is no dispute in the instant case that the same heroin was allegedly possessed and sold by the defendant in a single continuous transaction. There was no evidence of possession distinct and apart from the overall sale sequence.

The opinion of the Court of Appeals is correct in

its determination that possession and sale of nar-
cotics are separate crimes which may be sepa-
rately charged. *People v Stewart, supra.* In a given
case, sale may be found without possession. Like-
wise, possession may be determined without sale.
However, depending upon the facts developed at
trial, when the circumstance of possession is not
severable or apart from a sale and the jury con-
cludes the defendant is guilty of sale, then the
possession blends together with the sale so as to
constitute one single wrongful act.

Therefore, from the evidence adduced at this
trial, the illegal possession of heroin was obviously
a lesser included offense of the illegal sale of
heroin. When the jury *in the case at bar* found the
defendant guilty of the illegal sale of this heroin,
they necessarily found him guilty of possession of
the same heroin.

In the recent case of *People v Martin,* 398 Mich
303; 247 NW2d 303 (1976), this Court reached a
similar conclusion in a case where possession was
clearly a lesser included offense of delivery. *Martin*
relied on *State v Allen,* 292 A2d 167, 172 (Me,
1972), as authority for its holding. The *Allen* case
facts and rationale are directly on point with the
instant case:

"It is elementary that the State cannot divide a
single offense into several parts according to time and
conduct and base separate prosecutions upon and im-
pose separate punishments for the various necessary
divisions of that single crime. * * *

"The possession of narcotic drugs is an offense dis-
tinct from the sale thereof. But in the instant case the
possession and sale clearly constituted one single and
same act. The possession, as legally defined, is necessar-
ily a constitutent part of the sale, as legally defined.
Where the only possession of the narcotic drug is that
incident to and necessary for the sale thereof, and it

does not appear that there was possession before or after and apart from such sale, the State cannot fragment the accused's involvement into separate and distinct acts or transactions to obtain multiple convictions, and separate convictions under such circumstances will not stand. * * * The error is not cured by the fact the trial Court permitted the two sentences to run concurrently. * * * The conviction and sentence upon the charge of possession must be set aside." *Martin, supra,* 307–308.

The logic of *Martin* and *Allen* applies here. Defendant Stewart may not be "doubly punished" by convicting him of possession, which in *this* case was a "necessary" prerequisite or the *sine qua non* for the very sale for which he was also convicted.

Furthermore, as we stated in *Martin:*

"The guarantee against double jeopardy protects against not only a second *prosecution* for the same offense, but it also 'protects against multiple punishments for the same offense'. *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

" '[T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.' *Ex Parte Lange,* 85 US (18 Wall) 163, 173; 21 L Ed 872 (1874).

\* \* \*

" 'It is clear that preventing multiple punishment for the same offense was foremost in the minds of the framers of the double jeopardy clause. * * * Until joinder became permissible and commonplace, however, multiple punishment could result only from multiple trials.' Comment, *Twice In Jeopardy,* 75 Yale L J 262, 266, fn 13 (1965)." *Martin, supra,* 309–310. (Citations omitted.)

Nor can we accept the argument that since the two sentences run concurrently, a reversal on the lesser included offense is not required. The concept

of "double punishment" not only applies to the sentence, but also includes the conviction. The possession conviction, if allowed to stand, could punish the defendant in several ways, including parole considerations, impeachment at subsequent trials, and habitual offender treatment. See *Martin, supra,* 310.

For these reasons, we affirm the defendant's conviction on the higher charge of sale and vacate defendant's conviction on the lower charge of possession.[2]

## II

We do not find any of the defendant's other issues to be meritorious. Therefore, we will discuss them only summarily.

Defendant maintains that the prosecution failed to meet its burden of proof by establishing through

---

[2] In *Martin, supra,* we affirmed the conviction on the lower charge of possession and vacated the conviction on the higher charge of delivery.

However, *Martin* also included a pertinent erroneous instruction. In that case, the trial judge incorrectly instructed the jury that it could only find the defendant guilty of possession *and* delivery, or not guilty. The judge, in effect, compelled the jury to adopt an all-or-nothing approach. This Court's majority reasoned it could not readily be determined whether the jury believed the defendant guilty of the lesser or greater offense. Hence, the majority opted for the lesser offense.

In the instant case, the trial judge advised the jury, "there are three possible verdicts": guilty of sale, guilty of possession, or not guilty. Therefore, we can determine that the jury found the defendant guilty of the greater offense of sale since it could have returned a separate guilty verdict on the possession charge and a not guilty verdict on the sale charge. The jury's verdict was timely clarified on the record and specifically found defendant guilty of both counts.

The failure of the court to merely omit charging the jury that it could find but one of the two possible guilty verdicts does not vitiate the jury's determination here that the defendant was guilty of the greater charge. In this case, the jury was not instructed that they *had* to find the defendant guilty of both counts in order to find him guilty at all.

competent evidence that he had no license to either sell or possess heroin. While it is true that lack of a license is a necessary element for any crime involving the unlawful sale of narcotics, *People v Rios,* 386 Mich 172; 191 NW2d 297 (1971), the record here discloses that defendant during trial, in effect, stipulated that he had no such license.[3] Also, the court instructed the jury, "it has been stipulated in this case that the defendant did not have a license". Defendant neither objected to the charge as given nor requested that the change be modified. Furthermore, we note that at the time this trial occurred, it was legally impossible for anyone to obtain a license to either possess or sell heroin in Michigan. See *People v Harper,* 379 Mich 440; 152 NW2d 645 (1967). Also see 18 USC 1402* and *Harper v Kropp,* 426 F2d 108 (1970).

Defendant Stewart next contends that the trial

---

[3] The colloquy in open court, with the jury absent, was:

*"Mr. Lauck [Prosecutor]:* Your Honor, there is one more point I would like to bring out. That the statute, as read—and possibly it will come out as an instruction—talks about a person not having a license.

"Now, there is nobody in the state of Michigan, as I understand, *does [sic]* have a license to sell heroin.

*"The Court:* No.

*"Mr. Lauck:* So, I don't know whether we should enter into the stipulation that the jury should be told nobody has a license in the state of Michigan to sell heroin, so that they won't go off on that point.

"Defense counsel and I have talked about that previously, and *he said he would agree he has no license.*

"Of course, nobody can get a license to sell heroin.

*"The Court:* That's my understanding. Of course, his defense is he didn't do it. He doesn't have to have a license. He is not doing that.

*"Mr. Lauck:* Right. I just hope to make it clear to the jury they shouldn't decide the case on the fact there is no proof he didn't have a license, because there is nobody who does have a license.

*"Mr. Townsend [Defense Counsel]:* Well, your Honor, unless I went into an argument that assuming somebody made a sale that there is no proof that they did have a license. *I don't think that matter will be considered anyway."* (Emphasis supplied.)

* Repealed by 84 Stat 1292 (1970). *See* 21 USC 801 *et seq.*—RE-
PORTER.

court erred in not instructing the jury *sua sponte* as to two possible defenses:

(a) That defendant was entrapped as a matter of law, or, alternatively;

(b) That he was only acting as a procuring agent in the transaction between Ms. Boldin and "Junior".

Defendant relies heavily on *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973).

However, the defendant failed to raise either defense at his trial (which occurred, incidentally, before our decision in *Turner).* The defendant's defense at trial was that he did not commit either of the charged offenses. He made no motion either before or during trial alleging entrapment. Nor did he assert the procuring agent theory.[4] Furthermore, he entered no objection to the instructions given as required by GCR 1963, 516.2. It is also noted the defendant failed to raise these issues at the Court of Appeals.

Accordingly, we cannot second-guess defendant's trial strategy and reevaluate the evidence in light of possible defenses not raised. Nor can we reasonably expect a trial judge to instruct *sua sponte* on such defenses when they are not raised. Such instructions, if given *sua sponte,* could have interfered with defendant's theory of the case and proofs, and given credence to the people's theory and proofs. Conceivably, defendant then could allege on appeal that the trial court abused its discretion by giving unsolicited instructions.

Defendant Stewart next maintains that the prosecution failed to show due diligence in attempting

---

[4] It should be emphasized that this Court has not passed on the validity of the "procuring agent" defense. *People v Auer,* 393 Mich 667, 678, fn4; 227 NW2d 528, 533, fn4 (1975). In view of the fact that this "theory" was not even raised at trial, we need not treat the validity of this defense herein.

to produce defendant's named codefendant "Junior". However, the information in this case discloses that "Junior" was *not* an indorsed res gestae witness, MCLA 767.40; MSA 28.980. The people are not obligated to produce an unindorsed res gestae witness who is an accomplice.[5]

Therefore, defendant had no reason to expect the prosecution to produce "Junior". *Cf. People v Mitchell,* 48 Mich App 361; 210 NW2d 509 (1973), *lv den* 391 Mich 752 (1973). Furthermore, the defendant, even if indigent, has the power to subpoena a codefendant. MCLA 775.15; MSA 28.1252. The record discloses that the defense never asked that the codefendant be produced or requested a showing of due diligence be made by the prosecution. The record does disclose that the police did attempt to apprehend the codefendant and would have prosecuted him had they been able to locate him. Defendant's issue lacks merit.

Finally, defendant asserts that a 20-year minimum sentence for the sale of heroin constitutes cruel and/or unusual punishment[6] and, thus renders the statute unconstitutional. MCLA 335.152; MSA 18.1122.[7] We do not agree. In *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972), we found the 20-year minimum as applied to the sale of marijuana to be cruel and unusual punishment.

[5] *People v McCullough,* 81 Mich 25, 34; 45 NW 515 (1890); *People v Resh,* 107 Mich 251, 253; 65 NW 99 (1895); *People v Knoll,* 258 Mich 89, 98; 242 NW 222 (1932).

[6] The United States Constitution prohibits cruel *and* unusual punishment and the Michigan Constitution prohibits cruel *or* unusual punishment; the prohibition of punishment that is unusual but not necessarily cruel carries an implication that unusually excessive imprisonment is included in that prohibition. (US Const, Am VIII; Const 1963, art 1, § 16).

[7] Repealed by 1971 PA 196, § 66, eff April 1, 1972. MCLA 335.341; MSA 18.1070(41). Under the Controlled Substances Act, which became effective after defendant's conviction, the maximum sentence for sale of heroin is now 20 years and $25,000.

We did not find the statute itself unconstitutional. We are not prepared to extend our holding in *Lorentzen* to heroin.

*Lorentzen* determined, upon reviewing United States Supreme Court and Michigan Supreme Court cases, that the dominant test governing cruel and unusual punishment is whether "the punishment is in excess of any that would be suitable to fit the crime". We do not conclude that the statutorily prescribed penalty of a mandatory minimum imprisonment of 20 years, which may mean 10 years, 7 months, 6 days, given full credit for good time, is in excess of any that would be suitable to fit sellers of heroin.[8] It is not so excessive that it "shocks the conscience".

The social loss and attendant crime which is occasioned by heroin addiction in our society has reached tragic proportions.[9] We are unwilling to strike down as cruel and unusual this former statutory punishment, imposed upon those who sold heroin and thus traded in such human ignorance, weakness and degradation.[10]

---

[8] "An offender with a 20 year minimum sentence may get out after serving 10 years, 7 months, and 6 days, *if* he gets full credit for 'good time' and 'special good time', according to Michigan Department of Corrections computations made pursuant to MCLA 800.33; MSA 28.1403." *Lorentzen, supra,* 181.

[9] *See:* Drug Enforcement Administration, *Heroin Related Crime,* "A Comprehensive Analysis of the Major Aspects of Heroin User Crime" (United States Department of Justice, February, 1977).

Drug Enforcement Administration, *Drug Enforcement Statistical Report,* "Drug Indicators" (United States Department of Justice, December, 1975), pp 27–40.

The Strategy Council on Drug Abuse, *Federal Strategy For Drug Abuse and Drug Traffic Prevention,* "The Nature and Extent of Drug Abuse", (Washington, DC: United States Government Printing Office, November, 1976), pp 9–17.

*See also:* Kaplan, *A Primer on Heroin,* 27 Stan L Rev 801 (1975).

[10] This Court notes that harsh sentence results in a given case may be modified in view of recent corrective action taken by the Legislature. MCLA 335.361; MSA 18.1070(61). Depending upon his record, defendant may seek Parole Board consideration and possible commutation in light of the foregoing statute and the facts of this case.

Affirmed as modified.

WILLIAMS, COLEMAN, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

LEVIN, J. *(concurring in part and dissenting in part).* We agree that although the sentences for possession and sale of heroin would run concurrently, Stewart may not be "doubly punished" by convicting him of both offenses and that therefore one of the convictions must be vacated.

We do not agree that the conviction for sale should be affirmed and the conviction for possession vacated.

The judge's instructions were subject to the interpretation that the jury could only acquit of both offenses and could not convict of one and acquit of the other. The jury may have convicted Stewart of both offenses under the impression that in order to render a guilty verdict at all it must convict of both offenses.

The jury's verdict constitutes a finding that Stewart was at least guilty of possession and therefore we may properly affirm his conviction of the lesser offense. We would vacate the conviction for sale and affirm the conviction for possession.

I

In concluding his instructions to the jury the judge said:

"All right, members of the jury, there are *three* possible verdicts in this case.

"You may find the defendant guilty of sale of narcotics;

"You may find the defendant guilty of possession of narcotics;

"And you may find the defendant not guilty." (Emphasis supplied.)

There was a "fourth"[1] possible verdict not explicitly stated by the judge: not guilty of one offense and guilty of the other.

The jury, composed of persons not trained in the lexicon of the law, may have understood the judge's instruction, "you may find the defendant not guilty," to mean that any judgment of acquittal would be an acquittal of both offenses and therefore if there was to be any conviction at all it must be of both offenses. The jury may not have understood that it had a choice of finding Stewart not guilty of one offense and guilty of the other.

While the jury was not instructed that "they *had* to find the defendant guilty of both counts in order to find him guilty at all" (emphasis in original), and therefore this case is distinguishable from *Martin*[2] (where the judge instructed the jury that it could not bring in a verdict of guilty on one count and not guilty on another), the failure of the judge in this case to instruct the jury that it could bring in a verdict of guilty on one count and not guilty on the other may, as in *Martin,* have left it with a misapprehension regarding the possible verdicts.

While there was no objection to the instruction in the instant case, as in *Martin* "the responsibility for a properly conducted trial rests on all the participants, including the prosecuting attorney and trial judge".[3]

---

[1] Actually there were only three possible verdicts, but not the three adverted to by the judge. As set forth in *People v Martin*, 398 Mich 303; 247 NW2d 303 (1976), and the majority opinion in the instant case, although both the sale and possession charges may be submitted to a jury, it may not convict of both offenses.

[2] *People v Martin, supra.*

[3] *Id*, p 312.

The jury's verdict did not and could not indicate that all the jurors were free of misapprehension.[4]

## II

Since the jury was not properly instructed, we may not properly affirm the conviction of the greater offense and vacate the conviction of the lesser offense.[5]

Since the jury, even if under a misapprehension concerning the possible verdicts, by its verdict found that Stewart was at least guilty of possession,[6] there would be no prejudice to him in allowing the conviction for the lesser offense to stand. Stewart's conviction of the greater offense, sale of narcotics, should be vacated and the conviction of possession affirmed with an option in the prosecutor, if he is persuaded that the ends of justice

[4] When the jury returned the following occurred:

"*The Clerk:* Members of the jury, have you agreed upon a verdict?

"*Juror No. 4:* We have.

"*The Clerk:* And, if so, who shall speak for you? And what is your verdict?

"*Juror No. 4:* We find the defendant guilty as charged.

"*The Clerk:* Members of the jury, do you say upon your oaths that you find the defendant Howard Stewart guilty as charged, so say you, Mr. Foreman; so say you all, members of the jury?

"*Mr. Weiswasser:* May the people have a specification as to the counts, your Honor?

"*The Court:* Counts?

"*Mr. Weiswasser:* I understand there were two counts.

"*The Court:* That's right. All right. Do you find him guilty of count 1 and count 2?

"*Juror No. 4:* Right.

"*The Court:* All right. All right, the court thanks you for your verdict, and you are excused until tomorrow morning at 9 a.m.; you will report to the jury assembly room.

"Wait. Just before you leave. Do you want the jury polled?

"*Mr. Townsend:* No, your Honor, that won't be necessary."

[5] *People v Martin, supra,* p 313.

[6] The verdict of guilty of possession was an explicit finding of possession; the verdict of guilty of sale was, on the facts of this case, an implicit finding of possession.

would be better served by retrial for sale, to have both convictions vacated and a new trial on both charges[7] before a properly instructed jury.

## III

Since we would reverse the conviction for sale, we do not reach the question of the constitutionality of a 20-year mandatory minimum sentence for conviction of sale of a narcotic substance.

The statute prescribing that punishment has been amended to eliminate the mandatory minimum sentence.[8] If the prosecutor were to elect to have both convictions vacated and to have Stewart retried on both charges,[9] the constitutional question would not again arise.

We would vacate the conviction of sale and affirm the conviction of possession of heroin, with an option in the prosecutor to have a new trial on both charges.[10]

KAVANAGH, C. J., concurred with LEVIN, J.

---

[7] As stated in *Martin* and in the majority opinion in this case, although both charges may be submitted to the jury, it must be instructed that it can only convict of one offense.

[8] 1971 PA 196, § 41; MCLA 335.341; MSA 18.1070(41).

[9] " * * * If, before the effective date of this act, a person has committed an offense similar to an offense set out in chapter 4 but has not been sentenced as of that date, the sentencing judge shall not impose a sentence in excess of the penalty described in chapter 4 for the similar offense." 1971 PA 196, § 61; MCLA 335.361; MSA 18.1070(61).

[10] *See* fn 7, *supra.*